(50 South. 162.)

No. 17,500.

STATE v. BOASBERG.

(April 26, 1909. On the Merits, June 30, 1909.)

1. BAIL (§ 39*)—IN CRIMINAL PROSECUTIONS—NATURE OF REMEDY.

If a person convicted of crime is at large under bond, his whereabouts is the concern of his sureties alone, and they may permit him to go beyond the limits of the state.

[Ed. Note.—For other cases, see Bail, Cent. Dig. § 139; Dec. Dig. § 39.*]

2. CRIMINAL LAW (§ 1144*) — APPEAL — PRESUMPTIONS—BAIL.

Where an accused was set at liberty by the trial court, it must be presumed that he was under bond, since the court would be without authority to release him on any other condition, under Rev. St. § 1010, permitting the judge

124 LA.—10

to set at liberty one charged with crime upon his giving bond with approved sureties.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1144.*]

3. CRIMINAL LAW (§ 639*) — ATTORNEY FOR PROSECUTION—DISQUALIFICATION OF PROSECUTING ATTORNEY.

Acts 1877, p. 35, No. 35, § 2, provides that a district attorney shall be recused by the judge in criminal cases if he be related to accused, or to the person injured by accused, within the fourth degree, or be his father-in-law, son-in-law, or brother-in-law, or if he has been employed or consulted as attorney for accused before his election or appointment as district attorney. Acts 1886, p. 113, No. 74, provides that the district judges may appoint a competent attorney to represent the state, when from any cause the district attorney is recused, necessarily absent, or sick. Held, that the judge could not recuse a district attorney in a prosecution for violation of the anti-race track law merely because the attorney believed that no law had been violated.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1485; Dec. Dig. § 639.*]

4. INDICTMENT AND INFORMATION (§ 39*)—INFORMATION—WHO MAY FILE.

An information filed by an attorney appointed by the judge to act in the district attorney's stead was a nullity, when the district attorney was improperly recused by the judge.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 150; Dec. Dig. § 39.*]

5. STATUTES (§ 211*)—TITLES—ENLARGING ENACTING CLAUSE.

The title of an act, which is no part of the statute, cannot enlarge the enacting clause, where there is no ambiguity therein; and hence Acts 1886, p. 113, No. 74, § 1, providing for the recusation mentioned in Acts 1877, p. 35, No. 35, § 2, with additional grounds of necessary absence or sickness, was not enlarged by the title of the act of 1886, reciting that it authorized the appointment of attorneys to represent the state when the district attorney from any cause "will not act."

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 288; Dec. Dig. § 211.*]

6. INDICTMENT AND INFORMATION (§ 2*)—CONSTITUTIONAL PROVISIONS — "INDICTMENT"— "INFORMATION."

The provision of the Bill of Rights that prosecutions shall be by indictment or information was intended to secure the citizen against prosecution by private citizen, or by any authority other than a grand jury or a district attorney; "indictment" as used meaning a presentment by a grand jury, and "information" meaning a presentment by a district attorney or other officer constituted by law to exercise the

functions which at common law in 1805 were exercised by the law officer of the crown.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 4; Dec. Dig. § 2.*

For other definitions, see Words and Phrases, vol. 4, pp. 3551–3555, 3585–3589.]

Breaux, C. J., dissenting.

Appeal from Twenty-Eighth Judicial District Court, Parish of Jefferson; Prentice Ellis Edrington, Judge.

Mark Boasberg, alias J. Sheehan, was convicted of violating the anti-race track law, and he appeals. Judgment set aside, and information quashed.

Frederick Anthony Middleton and Robert Hardin Marr, for appellant. St. Clair Adams, Acting Dist. Atty., and Warren Doyle, Asst. Dist. Atty. (Ruffin Golson Pleasant, of counsel), for the State.

### On Motion to Dismiss.

PROVOSTY, J. A motion to dismiss the appeal has been filed, supported by affidavit. The grounds are that the defendant is a fugitive from justice, and is presently in another state, and has declared his intention not to return to this state and abide the event of the present case. It is further stated in the affidavit that after defendant had been sentenced, and an appeal had been granted him, and after he had removed himself beyond the jurisdiction of the court, he obtained leave through counsel to absent himself from the jurisdiction of the court for 45 days. In the brief it is stated that 1 day prior to the expiration of said 45 days, and while the defendant was still out of the state, and long after the transcript of appeal had been filed in this court, the judge extended said leave of absence until the present appeal should have been decided.

The argument is that, from the moment the appeal was granted, the case passed from the trial court to this court, and the trial court became divested of jurisdiction over it,

and that, therefore, the judge was without authority to extend the leave of absence, and, as a consequence, the defendant is out of the state without leave, and ipso facto a fugitive from justice.

The question must be whether the defendant is under bond. If he is, his whereabouts is the concern of his sureties alone, in whose constant custody he is presumed to be. State v. Cunningham, 10 La. Ann. 393. They "may permit him to go beyond the limits of the state." Taylor v. Taintor, 16 Wall. 366, 21 L. Ed. 287–290.

The inference would naturally be that the defendant is under bond, since the trial court would have been without authority to release him on any other condition. Rev. St. § 1010. But the record does not show it—in fact, does not even show that he was ever under arrest.

The only disposition we can make of the matter, in its present shape, is to enter the following order:

The clerk of the Twenty-Eighth judicial district court in and for the parish of Jefferson is ordered to send up to this court a supplementary transcript, such as, together with the transcript already filed in this court, will contain and show all the proceedings had and all the documents filed, from first to last, in the case of State v. Mark Boasberg, alias J. Sheehan, No. 945 of said court.

### On the Merits.

An affidavit was made in the parish of Jefferson, charging the defendant with having violated, in said parish, act No. 57, p. 64, of 1908, popularly known as the "Anti-Race Track Law" or "Locke Bill." The district attorney of that parish moved his own recusation, assigning as his reason that the said affidavit had been made, and that others might thereafter be made against other parties, but that he had visited in person the race track in question, and carefully ob-

served and thoroughly investigated the method and manner of betting on horse races there practiced, and had come to the conclusion that the same was not a violation of said act No. 57, p. 64, of 1908, and that therefore he could not honestly and consistently with his sense of duty as district attorney prosecute the defendant on said affidavit, nor any other person against whom a similar charge might be made.

The court granted the motion, and made an order appointing St. Clair Adams, Esq., the district attorney of the adjoining parish of Orleans, as district attorney pro tempore to act in place of the district attorney recused, "to prosecute any violation of act No. 57 of 1908, from the opening day of the Suburban race track to its closing day."

The attorneys for the defendant reserved a bill of exceptions to the said action of the court, which bill recites that the said motion sets forth none of the grounds prescribed by law for which a district attorney may recuse himself, and that the grand jury is still in attendance on the court, and could be convened at any time for the consideration of any matters that might be brought before it.

Mr. Adams, thus appointed district attorney pro tempore by the court, then filed the information upon which the present prosecution is based.

The defendant filed a motion to quash the information, on the ground that the recusation of the district attorney was not based upon any one of the grounds of recusation prescribed by law, and that therefore the appointment of Mr. Adams was a nullity, and he without authority to file an information, and that, in consequence, the information itself was a nullity.

The facts in that connection, and the contentions of the prosecution, are concisely stated in the brief in behalf of the state, as follows:

"It appears from the record that a race meeting was conducted at the Suburban race track in the parish of Jefferson for a period of about a week, and that gambling on the races obtained during that time under a system which the promoters styled 'individual betting.' From the record it appears that the district attorney visited the Suburban race track and observed the method and manner of betting on said races and came to the conclusion that said system was not in violation of act No. 57, p. 64, of 1908. There was a demand made upon the district attorney and the sheriff of the parish of Jefferson to enforce this statute against race track gambling by the Governor of the state, who under the law is charged with the responsibility for the execution of the law. The district attorney was of the opinion that no law had been violated and refused to act, and thereupon filed a motion asking that he be recused from prosecuting any of the cases that might and did grow out of the operation of said Suburban race track. At the time that this recusation was tendered and accepted by the court, there was pending before the court charges against one Mark Boasberg and one W. R. Ralston for violating act No. 57, p. 64, of 1908. Upon the hearing of the motion to quash the information filed by the acting district attorney upon the ground that the recusation and subsequent appointment of an acting district attorney, the district attorney for the parish of Jefferson was called to the witness stand and testified that he was not related to the prisoner within the fourth degree, nor his father-in-law, nor his brother-in-law, and had never been employed or consulted as an attorney for the accused. On cross-examination by the acting district attorney, he was asked, 'Why did you recuse yourself in this Locke law case?' and he answered, 'Because I did not believe that the law had been violated, and, as the Governor is of the opinion that the law has been violated, I thought it proper to recuse myself, and for the court to appoint somebody else to represent the state.'

"It is contended by defendant that the only grounds upon which a district attorney may recuse himself are set forth in act No. 35, p. 35, of 1877. The pertinent part of this act reads as follows:

"'Sec. 2. That any district attorney shall be recused by the judge in criminal cases:

"'(1) If said district attorney be related to the party accused within the fourth degree, or be his father-in-law, or his son-in-law, or his brother-in-law.

"'(2) If said district attorney be related to the party injured by the accused within the fourth degree, or be his father-in-law, son-in-law, or brother-in-law, injured by the accused.

"'(3) If said district attorney had been employed or consulted as attorney for the accused before his election or appointment as district attorney.'

"We concede that the district attorney did not recuse himself for any of the reasons set forth in the quoted statute. But we earnestly contend that the causes set forth in said stat-

ute are not exclusive, but are, as far as they go, absolute.

"It will be noted that the section begins with the following language: 'That any district attorney shall be recused by the judge in criminal cases'—and then sets forth the causes therefor. So that, where any of the causes set forth exist, it is the duty of the district judge, irrespective of the wishes of the district attorney, to recuse him in such cases. But in any other case, where, for reason of public policy or because of interest, a district attorney believes it to be his duty to recuse himself, then, we say, it is a matter within the sound discretion of the court to grant the order of recusation or not.

"For instance, this statute does not provide that, if a district attorney's wife is charged with crime, the judge shall recuse him. It does not provide that, if the district attorney be interested in property whose use might constitute a violation of law, the judge shall recuse him; and if the imagination was exercised numerous other cases would suggest themselves where it would be the duty of a district attorney morally and for reasons of public policy to recuse himself. We suggest that the case at bar is typical, and that public policy absolutely demanded that the district attorney recuse himself. The facts demonstrated that race track gambling in its most flagrant form, with book makers paying daily tribute to the racing association, was conducted at the Suburban track for over a week, and though the old system of betting was simply modified, a little such disguise in method may have convinced the district attorney that no violation of the law had taken place; but the facts remain, cold and stern, that there were daily and hourly violations of act No. 57, p. 64, of 1908; at the Suburban race track, and the district judge of the parish of Jefferson so found when the case was tried.

"We do not question the right of the district attorney to form the opinion which he did, and we think he acted properly when, realizing that the vast majority of the people believed that the law was violated, and when the Governor of the state demanded prosecution, he, holding his opinion, properly recused himself. This was a demand made by public policy. If he had not the right to recuse himself, so that some other officer of the law might prosecute, what would have been the result? Race track gambling could have been conducted day in and day out, from month to month, in the parish of Jefferson, and there would be no one to enforce the plain provisions of the law. Such a condition of affairs could not and would not be tolerated in the bowels of China, much less in a civilized subdivision of the United States.

"That the causes for recusation, set forth in act No. 35, p. 35, of 1877, are not exclusive, is plain, because they do not provide for recusation where the district attorney has an interest in the litigation. We do not suggest or believe that the district attorney had an interest directly or indirectly in the Suburban race track; but, if he did have, in such a case would not recusation be proper? Would not public policy demand such a course of action upon his part? Therefore we say that the causes of recusation set forth in act No. 35, p. 35, of 1877, are not exclusive, and that the judge, in his discretion, has the right to accept a recusation made by a district attorney whenever public policy and public morals so demand.

"But act No. 35, p. 35, of 1877, must be read in connection with act No. 74, p. 113, of 1886. It was under this latter act that the acting district attorney was appointed by the judge. It reads as follows:

" 'No. 74. An act authorizing the district judges throughout the state to appoint attorneys to represent the state in civil and criminal matters, when the district attorney from any cause cannot or will not act.

" 'Section 1. Be it enacted by the General Assembly of the state of Louisiana, that district judges throughout the state be and are hereby authorized and empowered to appoint a competent attorney to represent the state in criminal and civil matters pending before their courts, when from any cause the district attorney is recused, necessarily absent or sick; provided, the compensation for services rendered in such cases shall not exceed the fees now allowed by law to district attorneys for similar services, and said compensation shall come out of the fees which would otherwise go to the district attorney for such services.'

"This act certainly extends and modifies the provisions of act No. 35, p. 35, of 1877, and necessarily amplifies the causes for which a district attorney may recuse himself. We call particular attention to the title, which heads:

" 'Authorizing the district judges throughout the state to appoint attorneys to represent the state in civil and criminal matters, when the district attorney from any cause cannot or will not act.'

"And he who runs may read the plain meaning of this provision. The district attorney in the case at bar would not act, and therefore his recusation was accepted and another attorney appointed in his room. It is true that in the body of the act the words 'or will not act' do not appear. But words equally significant do appear, to wit: 'When, from any cause, the district attorney is recused.'

"Whether the words 'or will not act' appear in the body of the act or not, they must be given effect just as if they were written beneath the enacting clause of the statute."

The question presented is simply whether the district attorney may recuse himself on any ground other than one of those prescribed by said act No. 35, p. 35, of 1877, hereinabove quoted. We do not think he can. The grounds of recusation prescribed for

judges in the said act have been held to be limitative. Succession of Pinaud, Man. Unrep. Cas. 37; State ex rel. v. Judge, 41 La. Ann. 319, 6 South. 22; State v. Chantlain, 42 La. Ann. 718, 7 South. 669. And we think that, on the same principle, the similar grounds prescribed for district attorneys are in like manner limitative.

The recusation of the district attorney in this case, not having been founded on any one of the grounds thus prescribed, was null and void. The district attorney was therefore not recused; and, since he was not recused, nor sick or absent, the judge was without authority, under act No. 74, p. 113, of 1886, hereinabove quoted to appoint an attorney to act in his place, and in consequence the appointment of Mr. Adams was a nullity, and the information filed by him was a nullity.

The contention that the title of said act No. 74, p. 113, of 1886, enlarges the enacting clause of the act can hardly be serious. The title of a statute is no part of the statute. What effect it may have upon the statute is stated by Chief Justice Marshall in U. S. v. Fisher, 2 Cranch, 358, 2 L. Ed. 304, as follows:

"On the influence which the title ought to have, in construing the enacting clause, much has been said; and yet it is not easy to discern the point of difference between the opposing counsel in this respect. Neither party contends that the title of an act can control plain words in the body of the statute; and neither denies that, taken with other parties, it may assist in removing ambiguities. When the intent is plain, nothing is left to construction. Where the mind labors to discover the design of the Legislature, it seizes everything from which aid can be derived; and in such case the title claims a degree of notice, and will have its due share of consideration."

There is no ambiguity in this act of 1886. The recusation it speaks of is necessarily the recusation which the law allows as prescribed by the act of 1877; and the words "absent or sick" mean absent or sick, and cannot mean anything else.

The reasons of so-called public policy hereinabove assigned why the recusation of the district attorney is said to have been proper in this case, impress us just the other way. The Bill of Rights provides that "prosecutions shall be by indictment or information." What the object and purpose of this provision is is sufficiently made plain by the simple fact of its being found in the Bill of Rights. It is to secure the citizen against prosecution by private citizen, by Governor, or judge, or by any authority other than a grand jury or a district attorney. Indictment means a presentment by a grand jury, and information means a presentment by a district attorney, or other officer constituted by law to exercise the functions which at common law in 1805 were exercised by the law officer of the crown. To the grand jury and to the district attorney, and not to popular clamor or to the executive, is confided by the Constitution the discretion of determining when the citizen shall be brought before the court. That discretion the district attorney must, upon occasion, exercise, and not divest himself of, as he would of his coat. And the very time when the policy of our law, as embodied in the Constitution and the statutes, requires that he should not shirk this responsibility, is when there is popular clamor, or if judge or executive should ever undertake to dictate in matters of criminal prosecution.

We may add that it goes without saying that the statement hereinabove made that the manner in which the betting was being conducted at the Suburban race track was in flagrant violation of act No. 57, p. 64, of 1908, is the statement of counsel, and not of this court. Whether the said manner of betting amounted, or not, to a violation of said statute, is one of the questions presented in this case, and which this court is glad to be spared the trouble of deciding. The learned counsel for the state did not think

the proposition so plain as not to be debatable, since they made elaborate argument upon it. The district attorney and the grand jury are the authorities constituted by law for the primary decision of that question. Until they, or either one of them, shall have decided it in the affirmative, the courts have no concern with it.

Judgment set aside, and information quashed.

See dissenting opinion of BREAUX, C. J., 50 South. 165.