BREAUX, C. J.
The Teutonia Banli & Trust Company, of which Eugene F. Buhler was president, and Jos. H. Gomilla, a director, and Adam Wagatha, also a director, became involved in debt. On the 13th day of April, 1912, it was stated that it was in a failing condition. The bank did not close its doors, but continued to receive deposits and to transact banking business.
The State Bank Examiner took charge of its affairs, and a short time thereafter closed its doors.
A bill of information was filed against defendants jointly, charging them with having received deposits although the bank was insolvent. The bill of information sets forth the particulars of the alleged crime.
The defendants were arraigned, and in due time the case was set for trial.
The case against Wagatha, the third defendant, was not tried; he was ill and absent. Buhler and Gomilla were tried and found guilty. From the sentence condemning them to serve at hard labor in the penitentiary for seven years, they have appealed.
The first ground urged by defendants was that they should not have been charged jointly with having committed separate and distinct felonies. That they were illegally charged with having consented to the making of deposits in the Teutonia Bank, although they knew that the bank was in a failing condition.
Defendant Gomilla in his defense, added, in substance, that it was not set out in the bill of information that it was his duty, as a director of the bank, to assent to deposits or to refuse deposits; nor was it charged that he was an officer of the bank.
The foregoing forms the basis of part of the defense, although not dwelt upon at any length in argument. Other points of more importance received greater attention. Later, whatever may be worthy of direct mention in the foregoing will receive our attention.
[1] Defendant Gomilla moved also for a bill of particulars, which was denied.
As relates to this application for a bill of particulars, we can only say that it presents scant ground, even for an argument. There was no showing of prejudice occasioned by the refusal to grant the application. The information itself was quite lengthy and recited the facts of the alleged crime. No relief can be granted on this ground. The court properly exercised its discretion in refusing the bill of particulars. It is in very great part a matter left with the trial court. State v. Goodson, 116 La. 398, 40 South. 771; Cyc. Procedure, vol. 22, p. 371; Mars’ Jurisprudence, pp. 433, 253.
[2, 3] Defendants made application for a continuance on the ground that they could not safely go to trial without the testimony of defendant Wagatha, who was out of the state and too ill to be present. Their *1070 grounds for a continuance, briefly stated, were that defendant Wagatha was well informed about the condition of the bank; that he could give important information in their defense; that by him they would prove that neither of the present defendants was ever aware of the insolvency of the bank; that he (Wagatha) had charge of the department of the bank that gave him special opportunity to be well informed in regard to its financial condition; that he alone could testify in regard to the value of the bank’s assets and in regard to other facts of great importance to the defendants.
A number of continuances had been granted.
The court overruled the motion. In refusing the motion for a continuance, the court stated that the case had first been fixed for trial in the month of July, 1912. That he deemed it proper to continue the ease because of the absence of counsel, who was away on public duty. That, when the case was called in October following, it was continued because of the absence of defendant Wagatha, who was unable to attend the trial. That at that time Buhler and Hornilla, the defendants, through counsel, stated that they were ready for trial and would stand their trial without the presence of Wagatha. Thereupon the district attorney announced that the case would be called for trial on the 7th day of November following, with or without the presence of defendant Wagatha. Counsel for defendants stated that they also would be ready for trial without the presence of defendant Wagatha. When the case was called on November 7th, it was stated that one of the defendants had changed- counsel, and that the counsel recently employed had not had time to prepare himself. There was in consequence a few days’ delay granted, and the case was again called for trial on November the 11th. At that time defendants applied for a continuance again because of the absence of defendant Wagatha.
The coroner had been ordered by the court to go to Mississippi City and examine into the physical and mental condition of the defendant Wagatha. The coroner reported that he was suffering with fever and threatened with paresis; that it was doubtful if ever it would be possible for him to testify, but still the coroner added that “he might within five or six weeks be able to testify.” The court stated that the case was continued from this date to the 14th of January following (over two months after the last continuance) in order to give defendants another opportunity to procure the presence of the witness. In the meantime the coroner again reported in regard to defendant Wagatha. He again made examination into his physical and mental condition. He stated that he was not at that time in a condition to be moved or to testify, but that, if he continued to improve as he had in the six or seven weeks preceding, in his (the coroner’s) opinion he would be able to be present and give testimony within four or five weeks.
We have carefully read the testimony of the coroner given about this time. Taken as a whole, it does not create the impression that there was any certainty about the return of this defendant Wagatha to the state. There was no certainty of his return because of his physical and mental condition.
It was after this last report of the coroner that defendants applied for further delay, which was refused.
That is the delay of which we first'made mention above.
Learned counsel for defendants urge that an error was committed by the court in refusing further delay.
The court says in regard to his refusal that he did not think that the presence of the witness could be obtained within any reasonable time. That he did not consider it proper to grant further continuance on a mere hope that possibly in time witness Wagatha *1072 would attend. That numerous continuances bad been granted and sufficient delay allowed. He saw no reason to continue tbe case indefinitely to await the presence of a witness, to quote from bis statement, “wbo was sojourning in an adjoining state, and who, it may be, would never recover sufficiently to testify.” Tbe motion for a continuance was overruled.
[4] Tbe defendants swore to a state of facts which made it evident in the opinion of tbe trial court that they knew as much about the case as Wagatha, and that in consequence they could go to trial and swear in their own behalf. It was evident, said tbe court, that the testimony would be cumulative. Tbe court added that tbe absence of Wagatha bad caused no injury.
Tbe defendants have no good ground of complaint.
Generally continuances are left in great part to tbe discretion of tbe trial judge. Not only it must appear that error was committed in refusing tbe continuance, but that it operated prejudice and injury to tbe defendant. State v. Brette, 6 La. Ann. 658.
Tbe review of decisions in Mars’ Digest of Criminal Jurisprudence, § 372 et seq., sustains tbe proposition.
Cases ought to be tried. It is in public interest to put an end to annoying litigation. In this instance a trial judge of great experience, and wbo doubtless was well informed, arrived at tbe conclusion that justice demanded that there should be a trial. Reason and authority suggest that tbe ruling was correct.
One of the grounds urged by tbe defense was that the testimony, although tbe trial judge stated that it was cumulative, was not cumulative.
Tbe nature of the case suggests that the testimony was cumulative. This testimony related to tbe management of the bank and its condition at tbe time. It would be strange if all tbe knowledge of one officer in regard to tbe bank’s management was entirely unknown to another.
Even if, as stated by learned counsel for defendants, tbe judge was not aware at tbe moment that be refused tbe continuance that tbe evidence was cumulative, but only became aware of tbe fact afterward, none tbe less, according to that view, tbe defendants were not prejudiced. Tbe evidence was not less cumulative although the court somewhat assumed from tbe proceedings that it was cumulative and only afterwards was confirmed in tbe assumption that it was cumulative.
We have no reason to infer that tbe judge was mistaken.
Tbe defendants filed no exception complaining of tbe court’s ruling at tbe time that they swore in their own behalf. They took a bill of exceptions, it is true, but not at that particular time. They did not, while swearing in their own behalf, call attention to any particular evidence that would be completed by. tbe testimony of Wagatha, tbe co-defendant, to which they were not able to swear.
Again tbe case of tbe State v. Longorio et al., 127 La. 268, 53 South. 560, is pertinent, and, we may say, determinative of tbe issues. As in tbe present case, it was subsequently developed on the trial that tbe testimony of absent witnesses would have been merely cumulative. Tbe court said that tbe defend-, 'ant was not entitled to a continuance, as the evidence would only be cumulative, and tbe court added that, although tbe knowledge of the eumulativeness of tbe evidence came to tbe court some time after the ruling, there bad been no prejudicial error committed by tbe trial court, and this court refused to set aside tbe verdict on that ground and held that tbe court of tbe first instance bad properly denied tbe continuance.
In tbe case of State v. Primeaux, 39 La. Ann. 673, 2 South. 423, the point was simi *1074 lar. This court affirmed the verdict and sentence.
Again, quoting on the subject of refusal of continuance on the ground of absence of witnesses, this court has frequently held that it would only interfere with the large discretion necessarily vested in the trial judge when the ruling was manifestly arbitrary and unjust. State v. Redmond, 37 La. Ann. 775, and authorities cited.
And lastly, it must be borne in mind that this witness was at some distance in another state ill.
It must be held that there was no error in trying the case at the time that it was tried. The law’s delay would become a crying evil were cases continued indefinitely to await the return of a witness who is ill in another state.
[5] Learned counsel on behalf of their cli-. ents earnestly urge that the trial court committed error by appointing an attorney to represent the state in place of the district attorney, who recused himself for cause. It is stated by the defense, in substance, that the article of the Constitution, No. 90, gives á right to every accused to be prosecuted “in the name and by the authority of the state.” We can only answer that right was not denied. It appears that at first it was urged by counsel for defendants that the assistant district attorney could not conduct the prosecution because his principal, the district attorney, had no authority to act. The defense took the position that the district attorney could not do indirectly that which he could not do directly. This view, urged by the defense, was taken by the court, we think properly, in order, doubtless, to make sure that the “state and its authority” could be properly represented; a special attorney was appointed by the court. Act 74 of 1886, p. 113.
The appointment was made strictly in accordance with the special authority conferred by the act cited, supra.
The statute does not contemplate that an assistant district attorney shall act when his principal cannot act because of his recusation. The occasion required the appointment of an attorney. Nothing else was to be done under the language of the statute. It was literally followed.
[6] The next point raised is that this specially appointed attorney to represent the state was not sworn as required by article 160 of the Constitution, which provides that an officer, before entering upon the duties of his office, shall take the prescribed oath.
It is true that in this instance the oath was not administered immediately after the appointment by the judge. Five jurors were examined and were accepted by the state and the defendant. They had not been sworn. No objection was raised to the appointment of special counsel at the time and to his conducting the prosecution. All that was done by this prosecuting officer, while he had not been sworn, was to examine these jurors who had been accepted but had not been sworn. On the morning following the day of the appointment of this special prosecuting attorney, it occurred to the judge that the officer’s oath should be administered to him. He so directed, and it was done.
The trial judge states in regard to this point that during the two weeks of the trial that followed there was no objection made to counsel representing the state, although counsel 'for defendants knew that he was not sworn until the day following his appointment. He also states that the defendants had not been placed in jeopardy yet; that they suffered no injury and were deprived of no legal right. It is true that counsel appointed by a court under the act cited above had important functions to discharge. None the less he is not a regularly elected or appointed officer; and, although his duties are highly important to the state, the law certainly does not require an oath to be taken. He is at all times an officer of the *1076 court, who may be called upon by the court to perform a special service. Was he an officer in the sense of the Constitution? If he was, an oath should have been administered ; but he is not an officer in that sense, and therefore it does not follow that an oath should be administered, although, as abundance does not vitiate, it may be preferable to administer an oath. Under the Act of 1817, p. 42, regarding the appointment by the court, the court had authority to appoint an attorney to prosecute. In State v. Viaux, 8 La. Ann. 517, an appointment was made under the authority of the cited act, which is similar to the act, before cited, of 1886 as relates to the particular point in discussion. The question arose in the cited case whether the appointee was an officer in the sense of the Constitution. This court held that he was not; that he was acting for an officer but not as an officer. If that decision be correct (and there is no intimation anywhere that it was ever held otherwise), there was no necessity of administering an oath. 'We will state, in order to cite another authority, it is, as before suggested, advisable that the oath be taken, but, if no objection be made at the time, it does not .give rise to grounds sufficient to set aside a verdict. State v. Cato, 116 La. 198, 40 South. 633; Eng. & Am. Ency. of Law, vol. 23, p. 299; No. 5.
The defense refers to the case of the State v. Boesberg, 124 La. 289, 50 South. 162, in which the court held that, the district attorney having been recused, the district .judge was without authority to appoint the district attorney of an adjoining district. The case was entirely different. There was no ground whatever to make the' appointment, and this court so held. It gave rise to an entirely different issue from the one under discussion.
But, say learned counsel, the court sustained the contention Boesberg suffered no injury, and yet the court held that the conviction was illegal. That may well be in a case in which there is patent illegality. It would not be proper to sustain a conviction not at all in accordance with law, a conviction that would be entirely void because of that fact. There is unquestionably a difference between total absence for recusation and one where there is cause within the language of an act; and in the latter instance, if a mere irregularity be committed, it will not be held that it was injurious unless it abundantly appears that it was injurious, and the slight irregularity, if there is one, will not be maintained.
In this instance we do not discover any irregularity at all. There is not a shadow of an irregularity.
[7] Another ground, to wit, the special attorney in his closing address to the jury said,' “Place your sympathy where it belongs (that is, with those who have suffered from this).” The interruption of counsel for defendant prevented the special counsel from closing Ms remark. The court instructed the jury to disregard the utterance, and the special attorney said to the jury, as representative of the state, that he did not wish a verdict based on sympathy; that the evidence was to be consulted. Learned counsel for the defendant contended that the harm done could not be undone. That a number of customers of the bank had lost money; the poor depositors and others. That in consequence there was a general feeling existing in the community in favor of those who had lost their little earnings. That the remark of the special district attorney awakened feelings inconsistent with the idea of correct decision as to the responsible parties.
The failure of a banking institution creates attention; the failure might be thought of by the jury with or without the remark. The trial judge states, in substance, the remark did not influence the jury in the least; *1078 that the argument of special counsel was fair and temperate and gave no good cause for criticism. To his opportunity for judging and his experience due weight must be given.
We have considered the decisions referred to by learned counsel.
The facts in those decisions were not similar to those here. There is here no question of race prejudice as in the Case of Jones, 127 La. 698, 53 South. 959, and other similar cases in which ill-advised and intemperate remarks were made and not properly checked at the time.
[8] This brings us to a consideration of an objection urged to the charge of the court and to the court’s refusal to specially instruct the jury as requested by counsel.
The court, in accordance with defendant Gomilla’s counsel, instru’cted the jury, to wit, in order to constitute “assent” to the reception of deposits, the jury must be convinced, beyond a reasonable doubt, that the employé receiving the deposit was under the control and subject to the orders of Gomilla.
This was an entirely liberal charge to which the defendants could not object. But the court added, if the bank from the evidence heard was doing a banking business and receiving deposits to the knowledge of defendants, that would be sufficient to hold them responsible for violating the statute, provided defendants knew that the bank was insolvent. In that case it is not necessary that the employé be under the direct control of the defendants. To this part of the charge defendants objected. We think that the charge is generally correct and affords no ground for setting aside the judgment. The defendant urges that it is not correct because, as defendant argues, a director of a bank who does not control the officers, referring particularly to. the teller, cannot be held under the terms of the law. In other words, in order to prove guilt, the defendant urged that it is necessary to prove that the director had some control of the bank; in some way had charge of the bank; had authority to order the officers not to carry on business and not to accept deposits.
We cannot in this instance agree with that view, if it be the contention that these defendants did not have the control and direction of the bank, for the trial judge’s statement is to the contrary. These defendants, in addition to their official positions, were members of the finance committee. One of the defendants was chairman, and the other we have noted was president of the bank. They certainly had responsibility as bankers in their respective positions. They must have had knowledge of the daily business of the bank, of the balances, and of its solvency or insolvency.
But the position of defendant is further that the director, in order to prove guilt, must have assented to the deposit.
We do not think that there is necessity for special, open, and direct assent. The fact that the bank invited deposits, that it held to the public that it was worthy of the confidence of depositors, gives rise to the inference that the directors assented to the receipt of deposits by the paying teller. Assent expresses concurrence. Can it be for a moment contended that the bank could have continued to receive deposits -without the concurrence of defendants? Assent may be taken in the sense of concurring, approving, ratifying. Oan it be that the finance committee and the president do not concur and ratify the business conducted by the bank? They allowed the business by abstaining from opposing. It cannot be assumed that these defendants did not comprehend the purpose of keeping the doors of the bank open. Assent can be implied from knowledge —in this instance from the knowledge that the bank was conducting public business *1080 as a bank. As the defendants must have taken part in the daily business, read or heard the different reports, they must have, in the nature of things, had knowledge whence came the funds which went to make the daily balance and the values in the hands of the bank. They must have known of the notes, the bills, of the securities, and other values. To say the least, all this implies permission to carry on the business, and permission here must have given rise to assent. If the president and chairman of the finance committee do not know whether deposits are received by the bank and whether the bank is solvent, who is to know? If any one must be held to have known of the character of the business, certainly it must be the board of directors.
[9] The defendant Gomilla also requested the court to instruct the jury, to wit:
“The fact that the Teutonia Bank & Trust Company was taken in charge by the Bank Examiner is not evidence of its insolvency.”
The trial judge informs us that it was one of the facts considered with other facts which proved the condition in which the bank was; proved that it was insolvent; that he did not consider that he should limit the evidence which had gone to the jury without objection, particularly as the Examiner had testified in regard to the cause for closing the bank that it was insolvent.
We are of opinion that the testimony was germane to the main issue, and there was no good reason to qualify or limit its effect after it had been admitted.
The learned counsel for Gomilla has cited several decisions. In one of these decisions it was held that the charge to the jury was not sufficient because the court failed to explain. That the unexplained failure to hand over money did not give rise to a presumption of guilt. State v. O’Kean, 35 La. Ann. 901.
That was a special case; the facts are different from those here; that case as an authority does not impress us as being pertinent to the present case, in which the facts consistently harmonize, as we understand, from the judge’s statement in support of the charge made by the state. We are not of the opinion that in this instance the court, by declining to limit the weight and effect of admissible testimony germane to the issues forming part of the facts already proven, erred. The weight to which the judge’s statement is entitled, unless the error is shown, precludes us from arriving at the conclusion that the verdict is null on this ground. To say the least, it was not prejudicial, as it was amply shown that the bank was insolvent by the testimony of the Examiner and by other facts. No attempt was made to prove the judge’s error.
Other points are raised. If we were to consider them at length, it would not change our conclusion. The act under which the defendants were prosecuted makes it an offense for the president and other officers of the bank designated to assent to the reception of deposits after knowledge of the insolvency of the bank. The offenses as charged were sufficiently distinct and separate; there is no illegal joining of offenses as charged. The banking laws are adopted with a view to their careful enforcement. Little is left to interpretation. They are far-reaching. They are made far-reaching because of the desire to sustain the regularity of business. They may be deeply felt by those who are not mindful of their requirements. It is not for us by interpretation to mitigate their force and effect. Financial regularity and stability are prominent traits of superior civilization which the lawmaker has attempted to sustain by adopting strict laws applying to all those in charge as officers of banking institutions.
For reasons assigned, the judgment is affirmed.