LANDRY, Judge.
Defendant, Orange Savings & Loan Association (Orange), a homestead building and loan association domiciled in Orange-County, Texas, has taken this appeal from a permanent injunction issued by the trial court upon relation of A. Clayton James, State Bank Commissioner (Commissioner). The injunction restrains and prohibits appellant from conducting business on the building and loan association plan or any part thereof in the State of Louisiana; making, granting or extending loans of money in the State of Louisiana secured by mortgage on immovable property situated in the state; soliciting and receiving state deposits, demand accounts or any other monies other than upon a fully mutual share basis; and from using in the State of Louisiana the words “savings and loan” in its corporate title. We find the injunction was improvidently issued and must therefore be recalled and set aside. We also find that the activities engaged in by Orange within the State of Louisiana are now in violation of the provisions of LSA-R.S. 6:773 as amended and re-enacted by Act 401 of 1966.
The League of Louisiana Savings and Loan Associations, Inc. intervened in this action asserting contentions identical to-those of the Commissioner.
For all practical purposes the facts and' circumstances attending the present litigation are undisputed. Narration thereof in some detail is essential to a proper understanding of the questions to be decided on. this appeal.
*185 Since July 28, 1964, appellant has engaged in this state in the business of making direct mortgage loans on real property situated ■within the state. Said activity has been conducted by appellant upon authority of a •certificate issued on the aforesaid date by the Honorable Wade O. Martin, Jr., Secretary of State, State of Louisiana, pursuant "to the provisions of Act 443 of 1952. In substance Act 443 of 1952 provides that foreign corporations may qualify to do business within the state for the sole purpose ■of making mortgage loans or purchasing and owning notes secured by mortgages on property within this state upon furnishing ■certain information and paying the taxes and fees therein required. Appellant acknowledges that since its aforesaid authorization it has engaged in the business of ■soliciting deposits, mortgage loans secured by the pledge of immovable property within the state and the purchase of mortgage loans in Louisiana by means of radio and newspaper advertising. Appellant concedes its ■said certificate of authorization does not permit solicitation or receipt of monies or ■demand deposits from Louisiana citizens within the state and shows that it has never maintained either an office or any personnel in this state for such purpose. Orange admits, however, it has received deposits from Louisiana citizens at its offices in the State ■of Texas. It also appears that while Orange has made numerous direct loans secured by mortgage on real property located within Louisiana, the only personnel engaged by appellant in the state is employed for the purposes of appraisal and inspection of properties and the servicing of loans. Several copies of mortgages obtained by appellant appear in the record and reflect that whereas they contain the usual security clauses found in the ordinary conventional mortgage, they omit the special provisions, such as sale and resale, customarily found in mortgages taken by building and loan associations.
Commissioner contends, nevertheless, the certificate of authority issued by the Secretary of State pursuant to Act 443 of 1952 is invalid because said statute has no application to building and loan associations. In short, Commissioner argues further that a building and loan association, foreign or domestic, may not engage in any business activity whatsoever in the State of Louisiana, without first complying with the provisions of the Louisiana “Building and Loan Association Law”, LSA-R.S. 6:721 et seq. In this regard Commissioner relies upon R.S. 6:773, which provides that foreign building and loan associations shall be permitted to conduct their business in this state only upon compliance with the statute which requires a certificate of convenience and necessity from Commissioner. It appears Orange previously made application to Commissioner for the certificate required under the aforesaid Building' and Loan Law but same was denied for lack of necessity. Alternatively Commissioner initially argued Act 443 of 1952 was repealed by Act 386 of 1960, consequently, even if the former statute applied to building and loan associations, the law is no longer in effect and the certificate granted thereunder is null and void. Finally, in a supplemental brief filed subsequent to the effective date of Act 401 of 1966, Commissioner asserts the whole matter has been rendered moot by said Act 401 of 1966 which amends and re-enacts LSA-R.S. 6:773 and provides that foreign building and loan associations may not solicit or make direct mortgage loans in this state without first obtaining a certificate from the Commissioner.
Appellant admits it does not have a certificate from the Commissioner to solicit and make direct mortgage loans on property situated within the state. It is appellant’s position that Act 443 of 1952 applies to all foreign corporations, including building and loan associations; that it was not repealed by Act 386 of 1960, as contended by appellee; that the certificate it holds from the Secretary of State thereunder is valid and authorizes the activities in which appellant is engaged in this state; and that Act 401 of 1966 does not require that appellant secure a certificate from the Com *186 missioner to engage in the solicitation of and making of direct mortgage loans in this state. In effect appellant contends the Building and Loan Law, LSA-R.S. 6:721 et seq. applies only to building and loan associations acting as such and carrying on a complete operation embracing all phases of such an institution including the making of loans and receipt of deposits. Appellant maintains its limited operation does not subject it to the requirement of complying with LSA-R.S. 6:721 et seq., since it is not operating as a building and loan association but only as a mortgage company, which activity is fully authorized by the certificate issued appellant by the Secretary of State pursuant to Act 443 of 1952. Orange also argues that it applied for the certificate from the Commissioner not through necessity but solely to attain the business advantages flowing from the right to use the special security devices which are available to building and loan associations but not enjoyed by financial institutions in general. Defendant contends its present certificate permits it to operate as a mortgage company, solicit and accept direct loans and use the words savings and loan in its corporate title. Appellant concedes the certificate it holds does not permit its operation on the building and loan plan and that it is not contending it has such authority.
The pertinent provision of Act 443 of 1952, upon which appellant relies, reads as follows:
“[Fjoreign corporations, including, without limitation, banks, investment and pension trusts, and mortgage and insurance companies, may qualify to do business in the State of Louisiana for the sole purpose of making mortgage loans or purchasing and owning notes secured by mortgages on Louisiana property by filing with the Secretary of State * *.” (Emphasis by the court.)
The foregoing statutory provision is followed by a list of requirements which include the payment of a stipulated fee.
Section 2 of Act 443 of 1952 declares that upon receipt of the requirements of the-Act, the Secretary of State shall issue a certificate of authority empowering the applicant to conduct in the State of Louisiana,, the transactions authorized in Section 1. We note the term “foreign corporations” employed in the act is without restriction,, limitation or qualification. The language used would seem to embrace corporations, of every nature whatsoever. Nothing in. the act itself gives the slightest inclination, of intent to exclude building and loan associations from its coverage.
Commissioner contends, however, said act does not apply to building and loan associations which comprise a special class of corporations and are subject to strict regulation and control as provided in our Building; and Loan Association Law, LSA-R.S. 6:721 et seq.
It is Commissioner’s position that our building and loan law is the exclusive source pursuant to which any such association, foreign or domestic, may engage in any activity whatsoever in this state and employ in its title the words “building and loan” or “savings and loan.” In this regard Commissioner points to LSA-R.S. 6:773, which expressly provides that foreign building and loan associations or any corporation representing itself to be such an association or doing business on the building association plan, shall be permitted to operate in this state only in pursuance with our building and loan law after securing the required certificate from the Commissioner. Ap-pellee also points out that LSA-R.S. 6:724 prohibits any corporation not organized pursuant to the building and loan law from using the words “savings and loan” in its corporate title. Also the Commissioner calls attention to the fact that our Business Corporation Law, LSA-R.S.. 12:1 et seq. prohibits any corporation organized thereunder from operating as a building and loan association or using the words “savings and loan” in its corporate name. Commissioner likewise calls attention to a similar prohibí *187 tion in our Nonprofit Corporation Law, LSA-R.S. 12:101 et seq.
In determining the issues whether Act 386 •of 1960 repealed Act 443 of 1952, either expressly or by implication and the effect, if any, which Act 401 of 1966 has upon the rights of foreign building and loan associations to engage in any activity whatsoever within the state without complying with our building and loan association law, certain pertinent rules of interpretation must be borne in mind.
The title or preamble of a statute forms no part of the act and may be resorted to for purposes of interpretation of the law only in case of doubt resulting from ambiguity in the body of the law. State v. Boasberg, 124 La. 289, 50 So. 162.
Repeal of statutes is not favored in law and the court will hold no statute expressly repealed in the absence of clear legislative intent to achieve such purpose.
Repeals by implications also find no favor in law, are never presumed and are to be avoided by the courts whenever it is possible to reconcile the allegedly conflicting statutes by fair and reasonable construction giving effect to each. State ex rel. Hodge v. Grace, 191 La. 15, 184 So. 527.
In the event of conflict or inconsistencies between laws, where the obvious purpose of a specific statute is to cover the whole subject matter therein dealt with, it supersedes all prior pertinent legislation. Johnson v. Sewerage District No. 2 of Parish of Caddo, 239 La. 840, 120 So.2d 262.
In resolving potential conflicts between a general and special law on the same subject, the special statute governs, irrespective of which statute was enacted first. Hewitt v. Webster, La.App., 118 So.2d 688.
We find no merit in the argument that Act 386 of 1960 expressly repealed Act 443 of 1952. The title of the act discloses its purpose “To define what shall not constitute doing business in the State of Louisiana by certain financial institutions investing in Louisiana loans, and providing exemption of same from the filing of charter, qualifying or becoming domesticated, and from the payment of any taxes or filing fees, save and except ad valorem taxes on real property; * * The title next declares the legislative intent to repeal Act 443 of 1952 and any other laws in conflict.
The pertinent provisions of Act 386 of 1960, namely, Section 2, subd. A, reads in part as follows:
“§ 241.
A. Without excluding other activities within the state, or activities outside this state involving taking security of real estate located in this state, which may not constitute transacting or engaging in business in this state, a foreign mutual savings bank or foreign mutual savings fund society, or any national banking association now or hereafter organized under the laws of the United States of America, or any bank or trust company now or hereafter incorporated or organized under the laws of any state of the United States of America (including the District of Columbia), or any foreign insurance company, or any foreign corporation all the capital stock of which (except directors’ qualifying shares) is owned by one or more such foreign mutual savings banks, foreign mutual savings fund societies, national banking associations, banks, trust companies, or foreign insurance companies, engaged in making or investing in loans secured by real estate or lending on the security of real estate, shall not be considered to be transacting or engaging in business in this state, by reason of carrying on in this state any one or more of the following activities:”
*188 The foregoing portion of the act in question is then followed by the specific enumeration of eleven categories of activities which, if engaged in by any of the named corporate entities, shall not be deemed the conduct of business within the state. It is significant that among the enumerated activities which are not to be considered doing business in this state, the making and the solicitation of either loans or deposits of direct mortgage loans and the solicitation of either loans or deposits within the state are not included. Section 5 declares that nothing in the act shall be construed to permit any alien corporation to do business in violation of either the small loan law of Louisiana, or the laws governing operation of building and loan associations or savings and loan associations. Of prime import is the fact that nowhere in the body of Act 386 of 1960 is there an expression of legislative intent to repeal Act 443 of 1952. While the title reflects intent to repeal Act 443 of 1952, no such repealing clause is contained in the body of the act. It appears Act 386 of 1960 was introduced in the legislature as Senate Bill 308, the title and body of which called for the express repeal of Act 443 of 1952. Its title also demonstrated legislative aim to define both what “shall” and “shall not” constitute doing business in the state by the classes of corporations therein covered. By house amendment, however, the original Senate Bill was altered to delete definition of what “shall” be considered doing business and excise the clause in the body of the act calling for the repeal of Act 443 of 1952. The house amendments were concurred in by the Senate and the bill thus became Act 386 of 1960 as amended. By removing the repeal clause from the body of the act we believe the legislature thusly disclosed its intention not to expressly repeal Act 443 of 1952. Therefore, the repeal clause contained in the title which forms no part of the act was rendered ineffective.
Nor do we find that Act 386 of 1960 repealed Act 443 of 1952 by implication. The two statutes deal with entirely different subject matters. The former merely defines what shall not constitute doing business in the state by the special classes of corporations therein enumerated. The latter deals with corporations in general and provides that all corporations, irrespective of class, may indulge in this state in the business of making direct mortgage loans pursuant to the terms therein specified. Reference to building and loan associations contained in Section 5 of Act 386 of 1960 does not per se and standing alone exclude such corporations from the effect of Act 443 of 1952. The I960 statute merely states that savings and loan-associations shall not operate in violation of the building and loan association law. If, therefore, pursuant to LSA-R.S. 6:721 et seq., Orange was not prohibited from operating pursuant to Act 443 of 1952, it is clear that Act 386 of 1960 would not, by its own terms, prohibit any activity permitted Orange under the certificate granted in accordance with the 1952 statute.
The question, therefore, is whether there is merit in appellant’s contention that our building and loan association law is not exclusive, does not preempt the entire field and by its own terms permits foreign associations to operate in the state on the limited plan indulged in by appellant without the necessity of complying with LSA-R.S. 6:721 et seq.
In this regard we find the position of the Commissioner well taken insofar as it is contended the entire matter has been rendered moot by the enactment of Act 401 of 1966.
Assuming arguendo, appellant’s position was perhaps heretofore meritorious in that the wording of the applicable statute may formerly have left doubt as to whether it intended to cover every aspect of building and loan association activities, any such doubt which may have existed has been dispelled by the adoption of Act 401 of 1966. As shall hereinafter appear, we find that the 1966 statute discloses clear *189 legislative intent to apply the building and loan law to all phases of operation by such corporations, domestic or foreign, subject only to the exceptions expressly provided for in Section 773, supra, as amended by Act 401 of 1966.
The general tenor of LSA-R.S. 6:721 et seq. gives the distinct impression the legislature intended it to cover and regulate the entire field of operations by building and loan associations both domestic and foreign. The statute is most comprehensive in its coverage of the subject matter and provides regulation of virtually every facet of such an enterprise. It suffices, we think, to state that the law regulates incorporation of such institutions and prescribes in minute detail the plan pursuant to which they shall operate and the exact manner in which all phases of such business shall be conducted. Strict supervision is imposed on all such corporations and no such concern is permitted to operate on the building and loan plan without first obtaining the certificate of necessity from the Commissioner as required by Section 773.
Prior to its amendment by the 1966 act, the pertinent portion of Section 773, read as follows:
“§ 773. Foreign building and loan associations, societies, or companies, or any corporation representing itself to be a building association, society, or thrift syndicate, installment investment company, or trust or association, or doing business on the building association plan, or in the manner provided for mutual building and loan associations, societies, or companies by this Part or upon similar plan, shall be permitted to conduct its business in Louisiana only in accordance with the provisions of this Part governing local associations. No association may do business in Louisiana until it procures from the commissioner a certificate of authority and public necessity. * * * ”
At first glance it would appear the foreg’oing section of the statute intended that a foreign corporation representing itself to be a building and loan association is not permitted to conduct any business whatsoever in the state without first complying with the statute. On the other hand, it could reasonably be argued that the section includes within its terms only those foreign institutions doing business on the building loan plan or a similar modus oper-andi. Any doubt, uncertainty or vagueness in this respect, however, has been dispelled by Act 401 of 1966, which amended and re-enacted Section 773.
The title of Act 401 of 1966 declares its purpose to amend LSA-R.S. 6:773 to provide specifically that foreign building and loan associations may not make, engage in or solicit direct loans secured by mortgage on real property situated in Louisiana without first obtaining a certificate of authority from the State Bank Commissioner. It avers further intent to allow foreign savings and loan associations to participate with local corporations in loans secured by mortgage on Louisiana property and acquire loans secured by mortgages or mortgage notes on real property in Louisiana pursuant to commitment agreements made prior or subsequent to origination or completion of such loans. Sub-paragraph (3) of Section 773, supra, as amended by Act 401 of 1966, contains the following significant language:
“Nothing in this Part shall be construed to repeal Act 443 of 1952 (LSA-R.S. 12:231-237) or Act 385 of 1960 (LSA-R.S. 12:241-245), or to require foreign-building and loan associations, societies, or companies, or any corporation representing itself to be a building association, society, or thrift syndicate, installment investment company, or trust or association, or doing business on the association plan, or in the manner provided for mutual building and loan associations, societies or companies, by this Part or upon a similar plan which qualifies under statutes or laws of this state outside of this *190 Part, to qualify under this Part for the purpose of: (a) participating in mortgage notes or loans with local associations, national or state hanks having their banking offices in this State, or with other persons, firms or corporations regularly and properly engaged in the business of making or servicing mortgage loans in Louisiana, and qualified to do business in Louisiana, or (b) from purchasing mortgage notes or loans secured by mortgages on immovable property having a situs in this state pursuant to commitments, agreements or arrangements made with persons, firms or corporations regularly and properly engaged in business in Louisiana, prior to or following the origination or creation of such loans, or (c) from purclvising mortgage notes or loans * * * if the original loan was made by a local association * * * However, no foreign building and loan association * * * representing itself to be a building and loan association * * * or doing business on the building association plan or in the manner provided for mutual building and loan associations * * * by this Part or under any similar plan may make, solicit, or engage in the direct mortgage loan business or may itself directly make or solicit loans secured by mortgages or vendor’s privileges on immovable property having a situs in the State of Lotiisiana without first procuring from the commissioner a certificate of authority and public necessity under this Part.” (Emphasis added.)
Section 2 of Act 401 of 1966 repeals all laws and parts of laws in conflict therewith.
Thus it is manifest that whatever may have been the former intention of the legislature with respect to the supervision intended to be exerted over foreign building and loan associations by the provisions of Section 773, supra, the 1966 amendment of that section is couched in language so clear and express as to leave no doubt as to the scope of the section as re-enacted.
By the terms of the 1966 amendment, the clear legislative aim is expressed to the effect that foreign building and loan associations do not have to comply with the provisions of LSA-R.S. 6:721 et seq. to: (1) participate in mortgage notes or loans with local associations, persons or firms regularly or properly engaged in the business of making mortgage loans in this state; (2) purchase mortgage loans on immovable property situated in Louisiana pursuant to commitments made with persons or firms properly engaged in business in Louisiana, prior or subsequent to creation or origination of the loan, and (3) purchase mortgage notes or loans if the original loan was made by a local association.
At the same time the 1966 amendment specifically prohibits a foreign building and loan association from making, soliciting or engaging in the direct mortgage loan business or itself directly making or soliciting loans secured by mortgage on real property within the state without first complying with the terms of Section 773, supra, as amended.
Considering the verbiage of Act 401 of 1966, including, inter alia, its express intent not to repeal either Act 443 of 1952 or 386 of 1960, the only logical conclusion to be drawn therefrom is that the legislature intended Act 443 of 1952 remain in force and effect so that foreign corporations, other than building and loan associations, could engage thereunder in the direct mortgage loan business in this state simply by complying with the provisions of such statute. It is equally clear that Act 401 of 1966 specifically prohibits foreign building and loan associations from engaging in the direct mortgage loan business without first obtaining the certificate required by LSA-R.S. 6:721 et seq. This is necessarily so inasmuch as Section 773, as amended by Act 401 of 1966, places foreign building and loan associations squarely within the ambit of presently worded Section 773 when they engage in the direct mortgage loan business or directly solicit *191 such loans. Further, there is no longer any doubt whatsoever but that the law as presently constituted permits foreign building and loan associations to currently engage in those activities presently permitted by Section 773 without the necessity of complying with the provisions of LSA-R.S. 6:721 et seq., merely upon compliance with the terms of Act 443 of 1952.
In supplemental brief, counsel for appellant contends the provisions of Act 401 of 1966 are inapplicable to the present case because of Section 3 thereof which reads as follows:
“Nothing contained herein shall affect any litigation now pending involving the interpretation of Section 773 of Title 6, Chapter 9, Part I of the Revised Statutes of the State of Louisiana, as presently worded, but this statute shall apply to all business done and all transactions which occur after the effective date of this statute.”
In effect counsel argues the foregoing provision renders the terms of the 1966 act ineffective insofar as concerns any litigation pending at the time it became enforceable. Counsel also maintains the effect of Act 401 of 1966 is to provide an alternate method for licensing foreign building and loan associations to engage in the direct mortgage loan business in this state.
We find that counsel is right in the first instance but in error as regards the second.
It is manifest from the terms of Section 3 of Act 401 of 1966 that the statute is intended to be non-retroactive. This is patent from those provisions 'which state that the act shall not affect any pending litigation involving interpretation of Section 773, as worded on the effective date of the 1966 act. Additionally, the 1966 law is expressly limited in application to all business done and all transactions occurring after its effective date.
It is a fundamental rule of legislative interpretation that the legislature is not presumed to adopt a vain, useless or meaningless law and that all provisions of a statute must be given such meaning as appears reasonable. Jarrell v. Gordy, La.App., 162 So.2d 577; City of New Orleans v. Board of Supervisors, 216 La. 116, 43 So.2d 237.
With the foregoing principle as a guide, we can only conclude that the language of Section 3, supra, conveys unmistakable-legislative intent to exculpate foreign savings and loan associations from any stigma of fault or liability for acts committed prior to the effective date of the 1966 statute, notwithstanding such activities would' amount to a violation of Act 401 of 1966-subsequent to its becoming operative. We also construe Section 3, supra, as recognition of legislative concern regarding the-full scope of Section 773 previous to its-1966 revision. In other words, we detect in Section 3, as altered by the 1966 act, some anxiety on the part of the legislature with respect to whether Section 773, supra, as theretofore worded, prohibited foreign-building and loan associations from engaging in the direct mortgage loan business without complying with the building and loan law. We can think of no other plausible reason for the express provision ini the 1966 act which specifically states its terms apply only to transactions postdating its enforceability. We are impelled to conclude that in so declaring the legislature had in mind the extreme and harsh penalties provided in Section 775 for operating as a building and loan association in this state without first obtaining the necessary certificate from the Commission.
Whatever may have been the legislative motivation, the expression of intent is clearly to the effect that no foreign building and loan association may be held in violation of the terms of the 1966 Act because of any activity antedating its efficacy.
We find totally without merit, appellant’s contention that Section 3, supra, is *192 tantamount to legislative provision of an alternate method for licensing foreign building and loan associations to engage in the direct mortgage loan business in this state.
This position is in direct contravention of the clear and express terms of Section 773, as amended in 1966. The statute in question leaves no doubt whatsoever regarding its scope and purview. Subsequent to its effective date, no foreign building and loan association is permitted to make direct mortgage loans, or advertise for loans or deposits in this state without securing the necessary certificate from the ■Commissioner. Any such activity engaged in by appellant after the operative date ■of Act 401 of 1966 would be a patent violation of its terms rendering appellant vulnerable to injunctive process to halt such violation and simultaneously exposing appellant to liability for the penalties provided in LSA-R.S. 6:775.
As the present appeal is “pending litigation”, within the meaning of the term as contained in Act 401 of 1966, and said statute expressly prohibits its retroactive application, we must perforce dissolve the permanent injunction rendered herein by the trial court.
It is therefore ordered, adjudged and decreed the permanent injunction issued herein by the trial court be and the same is hereby dissolved and plaintiff’s suit dismissed. All costs for which plaintiff may be legally assessed herein are to be paid by plaintiff.
Reversed and rendered.