No. 456

First Circuit

---

THIBODAUX BOILER WORKS v. PEO-
PLES SUGAR CO., INC.

---

(May 7, 1929. Opinion ·and Decree.)
(June 28, 1929. Rehearing Refused.)
(October 8, 1929. Writ of Certiorari
and Review Refused by Supreme Court.

Howell & Howell, of Thibodaux, attorneys for plaintiff, appellant.

Wurzlow & Watkins, of Houma, attorneys for defendant, appellee.

LECHE, J. Plaintiff made certain repairs to defendant's sugar factory, furnished the labor and material necessary for that purpose, and had its claim attested by a detailed statement duly sworn to recorded in the mortgage records of the parish of Terrebonne, where the property is situated. The repairs aforesaid were made during the year 1923, the account was recorded in December, 1923, and duly reinscribed in 1924, 1925, 1926, and 1927, each time within a year succeeding the date of the preceding registry. The account is also attested by a note of the Peoples Sugar Co., Inc., made January 1, 1926, bearing 7 per cent. interest per annum, for the sum of $974.60, and stipulating for the further payment of 10 per cent. attorney's fees in case of suit.

The present suit was filed November 29, 1927, and its purpose is to recover the amount of plaintiff's claim and to have the same recognized and decreed as being secured by lien and privilege upon defendant's sugar factory and the land upon which the factory is situated.

The only contested issue in connection with plaintiff's demand, on this appeal, is whether the claim is secured by the asserted lien and privilege. The district judge after mature consideration, as shown by elaborate reasons for judgment, was of the opinion that plaintiff had no lien and privilege, and plaintiff has appealed from his judgment.

Plaintiff relies for authority, as sanctioning its demand for recognition of a lien

378

and privilege, upon section 1 of Act 229, p. 494 of 1916. Defendant, in its answer, does not deny the existence of the claim, nor its registry as alleged, but contends that the claim is not secured by any lien and privilege; the same having been prescribed in one year. Defendant has not filed any brief, but, we assume, depends upon the trial judge's reasons for judgment to sustain its defense.

It is not controverted that plaintiff originally did have a privilege, but it is contended that section 6 of the cited act of 1916, which, although limiting the right of the lienholder to one year, permitted him to renew such lien in accordance with law, has been repealed by section 11 of Act 139, p. 290 of 1922, wherein the right of renewal is not mentioned or recognized.

Section 6 of the act of 1916 says that the privilege provided for by that act may be enforced by a civil action, and that such right of action shall prescribe within one year from the date or recordation of the privilege in the office of the recorder of mortgages, unless renewed in accordance with law. Both parties concede that the renewal mentioned in the statute means reinscription within one year. Such reinscriptions in this case appear to have been made in time, and that fact is not denied. But defendant contends that section 11 of the act of 1922, at page 294, says that the privilege of the contractor, furnisher of material, and others, as their interest may arise, is limited to the period of one year from the completion or occupancy of the building, and that there is no clause recognizing the right of renewal by the lienholder, and therefore that, to that extent, the provision permitting renewal in section 6 of the act of 1916 is repealed and no longer exists.

In order to ascertain whether the Act of 1922, No. 139, was intended to repeal the provisions of Act 229 of 1916, it may not be amiss to consider the history of our law in regard to privileges of contractors, subcontractors, workmen, and furnishers of material on buildings which have been erected or repaired by such contractors, etc., or in which such material has been used. At one time this whole subject-matter was regulated by the articles of the Civil Code, contained in section 3, chapter 3 (article 2756 et seq.), in regard to the letting out of labor of industry. The first statute amending these provisions of the Code, that we can find, is Act 180 of 1894, p. 223, which is entitled an act "relative to contracts for buildings and the security of workmen and furnishers of material." Its provisions are limited in their application to cities of 50,000 inhabitants. In 1896, at page 179 of the Acts of that year (No. 123), its provisions were enlarged so as to apply to cities of 10,000 inhabitants. In 1906, Act 134, p. 223, was adopted under the title of an act "relative to building contracts in cities in this State of over 50,000 inhabitants; providing for the bond to be given therein for the protection of the owner, sub-contractor, workmen, laborer, mechanics, and furnishers of materials, for the recording of the same, and the proceedings to be had thereunder." In 1908 there was adopted Act 65 entitled an act "relative to contracts for the repair, reconstruction, building and construction of buildings and the security of the sub-contractors, mechanics, painters, plumbers, tinners, carpenters, bricklayers, journeymen, laborers and other workmen employed in the repair, reconstruction, building or construction of buildings, and the furnishers of material and supplies to be used in said buildings and the manner of procedure thereunder." That

act contains a special provision "leaving unimpaired Act 123 of 1896 and Act 134 of 1906, in so far as they affect cities of over 10,000 and over 50,000" inhabitants. Section 6.

In 1912 another act, No. 167, p. 302, was adopted, entitled an act "relative to building contracts in this State," etc.

In 1914 was adopted Act 221, p. 418, entitled an act "To amend and re-enact section One of Act 167 of 1912, approved July 11, 1912, entiled, 'An act relative to building contracts in this State,'" etc.

In 1916 there was adopted Act 262, p. 536, of the acts of that year, which has for its object, amendments of the Acts 167 of 1912 and Act 221 of 1914. In 1922, at page 290, of the Acts of that year, was adopted Act 139, the purpose of which, according to its title, is "relative to the (sic) Building Contracts; providing for the bond to be given in connection therewith, for the recordation of the contract, and bond and proceedings to be had thereunder and to provide for the creation, recordation and recognition of liens and privileges and the protection of contractors, architects, consulting engineers, subcontractors, laborers, material men, mechanics, journeymen, cartmen, truckmen, and all others who shall do or perform any work or labor upon or furnish material, machinery or fixtures for any building or other structure upon land in this State."

In 1924, at page 504 of the Acts of 1924, No. 230, there was adopted an amendment to section 5 of Act 139 of 1922, and in 1926 there was again adopted Act 76, p. 93, of the Acts of that year, making it a criminal offense for a contractor or subcontractor who shall default in performing a contract, and who shall apply money received on account of said contract to any other purpose than the settlement of claims for labor and labor due under the contract. These two last cited statutes have no bearing upon the question at issue in this case.

Such is the legislation which we have been able to collect upon the subject of the liens and privileges of contractors and workmen, and of furnishers of material upon buildings, as it exists at the present time.

It is to be noted that all of these acts of the Legislature, from 1894 to the present time, relate to building contracts, and that the titles of all of them contain the words "building contracts" or words of equal import. It is then remarkable that the Act 229 of 1916, upon which plaintiff relies for the existence of the lien and privilege which it claims, does not use these words or any other words importing the idea of a building contract in its title. The title of Act 229 of 1916, reads as follows: "To provide for the creation, recognition and recordation of the liens and privileges of laborers, contractors, subcontractors, material men, mechanics and furnishers of machinery or fixtures, and to enforce the payment of said liens and privileges, and to repeal all laws in conflict herewith."

It is again to be noted particularly that this title does not state upon what property these liens and privileges bear. But section 1 does say that it bears upon any building, erection or improvements and upon land belonging to the owner of such building, etc.

At the same session of the Legislature, that body also adopted Act 262, p. 536 of the Acts of 1916, amending Act 167 of 1912, relative to building contracts. In the previous act, No. 229, is a provision

saying that this Act 229 shall not be construed to repeal or affect the operation of Act 167 of 1912, as amended by an Act No. 262 passed at this session of General Assembly.

From all of this, it seems patent that it was never intended by the Legislature that Act 229 of 1916 should affect, amend, or repeal any act on the subject of "Building Contracts," and, vice versa, that those acts recognizing and regulating "Building Contracts" should not affect, change or repeal Act 229, unless there is expressly contained therein a provision to that effect. In other words it seems that the Legislature intended Act 229 of 1916 to be applied to repairs and alterations of already existing buildings, while the other acts, especially Act 139 of 1922, were intended to apply only to the construction of new buildings. This distinction is sustained by the language of section 6 of Act 229 of 1916, which maintains the existence of the privilege for one year from the date or recordation of the privilege, unless renewed, while section 11 of the Act of 1922, No. 139, maintains the existence of the privilege for the term of one year from the *completion* or *occupancy* of the building, without any right of renewal on the part of the lienholder.

It is also recognized, as a firmly settled rule of jurisprudence in this state, that repeals by implication will not be presumed, that the two statutes must be so inconsistent that they cannot co-exist, and finally that wherever possible they should be so construed as to harmonize and not to clash with one another.

Guided by this rule and for the reasons herein before stated, we are of the opinion that there is no conflict between section 6 of Act 229 of 1916 and section 11 of Act 139 of 1922; that the former applies to buildings already constructed, while the latter applies to new construction; that plaintiff's rights as a privilege holder are regulated by the cited section of Act 229 of 1916; and that its privilege has been preserved and is still enforceable. This view of the subject is sustained by legislative interpretation, for by Act 298 of 1926, p. 548, Act 229 of 1916 is expressly repealed. If Act 229 of 1916 has been repealed by Act 139 of 1922, or by any other subsequent act, there would have been no necessity for this express repeal in the act of 1926.

For these reasons the judgment appealed from is avoided and reversed in so far as it fails to recognize and enforce the lien and privilege claimed by plaintiff, and in all other respects said judgment is affirmed, and it is ordered that plaintiff's claim be recognized as secured by lien and privilege upon the property described in its petition and that defendant pay all costs of both courts.