184 So. 527

**STATE ex rel. HODGE et al. v. GRACE et al.**

No. 34473.

June 27, 1938.

On Rehearing Oct. 31, 1938.

J. Raburn Monroe, of New Orleans, for appellants.

Gaston L. Porterie, Atty. Gen., and Lessley P. Gardner, 2d Asst. Atty. Gen., for respondents Lucille May Grace, Register of State Land Office and A. P. Tugwell, State Treasurer.

Sigur Martin, of Lutcher, and Breazeals & Sachse, of Baton Rouge, for respondents Board of Commissioners of Pontchartrain Levee Dist.

John E. Fleury, Dist. Atty., of Gretna, for amicus curiæ.

FOURNET, Justice.

This is an action by the heirs and legatees of the late John Ledyard Hodge, whose property was adjudicated to the State on November 7, 1891 for the unpaid taxes due the State and Parish for the years 1880 to 1890, inclusive, to compel the Register of the State Land Office, by writ of mandamus, to advise them of the amount of taxes for which their ancestor's property was adjudicated to the State and the amount which is necessary for them to contract to pay to redeem the same under the provisions of Act No. 161 of 1934, as amended by Act No. 14 of the Fourth Extra Session of 1935, and to execute and deliver in accordance with said Act the certificate therein provided for; and in the alternative, that the Register of the State Land Office execute and deliver to them a certificate of redemption under the provisions of Section 62 of Act No. 170 of 1898, as amended by Section 6 of Act No. 315 of 1910, amended by Section 1 of Act No. 41 of 1912, and amended by Section 1 of Act No. 72 of 1928.

By supplemental and amended petition, the Board of Commissioners of the Pontchartrain Levee District and the State Treasurer were also made parties to the proceeding.

The Register of the State Land Office filed exceptions of misjoinder of parties defendant and of no cause or right of action, and, with reservation of her rights thereunder, filed an answer denying that relators are entitled to the relief prayed for. The Board of Commissioners of the Pontchartrain Levee District filed at the same time, but in the following order, exceptions (1) to the jurisdiction of the court ratione personæ; (2) misjoinder of parties defendant; (3) no cause or right of action; and (4) prematurity, and with reservations of their rights thereunder, filed an answer. The State Treasurer answered on the merits.

The trial judge deferred ruling on the exception to the jurisdiction of the court ratione personæ filed by the Pontchartrain Levee District and referred all other exceptions to the merits. After hearing the evidence offered by the relators, none having been offered by the respondents, the trial judge maintained the plea to the jurisdiction filed by the Pontchartrain Levee District and the exceptions of misjoinder and no cause or right of action filed by the Register of the State Land Office, and dismissed relators' demands against all parties at their costs. From that judgment relators prosecute this appeal.

The record shows that the relators are the sole and only heirs at law of John Ledyard Hodge, who was the owner of an undivided two-thirds in and to Squares Nos. 14, 17, 22, 24, 26, 95, 97, 98, 99, 100, 101, 102 in the Town of Shrewsbury, Parish of Jefferson, which property was adjudicated to the State of Louisiana on November 7, 1891, for the unpaid taxes of 1880 to 1890, inclusive. Subsequently, on May 27, 1902, the property was transferred by the State to the Board of Commissioners of the Pontchartrain Levee District under the provisions of Act No. 95 of 1890, as amended by Act No. 96 of 1894,

in whom the title was vested at the date this suit was filed.

The trial judge favored us with a well-considered written opinion, in which he gave a thorough and able analysis of the statutes involved, as well as the pertinent authorities, and, in our opinion, correctly disposed of the case. We, therefore, quote with approval, from his opinion the following:

"Relators having alleged that they are entitled to redeem their lands under Act No. 161 of 1934, as amended, and having further alleged that the Register of the State Land Office is neglecting her duties, and has failed to issue, execute and deliver the certificates of redemption, as provided for in said Act, and the attorney for the Register of the State Land Office contending that this act releases the Register of the Land Office from all duty, ministerial or otherwise, and having filed an exception of misjoinder, this exception will now be considered in so far as it applies to the demands of relators, and the duties of the Register of the Land Office under this particular act.

"The Act, as amended, which relators are seeking to invoke reads as follows:

"'Section 1. Be it enacted by the Legislature of Louisiana, That from the date this Act takes effect, and up to twelve o'clock noon of the twentieth day after the regular session of the Legislature of 1936 shall have adjourned, if the owner or any person interested personally or as heir, legatee, creditor or otherwise, except a judgment creditor of the owner, in any

lots or lands bid in for and adjudicated to the State, or any of its political subdivisions, as long as the title thereto is in the State, or in any of its political subdivisions, or if not heretofore contracted to be sold by the State or such subdivisions, shall contract to pay to the Treasurer of the State, or the proper authority of such political subdivision, in the manner hereinafter provided, the amount of the actual taxes for which said lots or lands were adjudicated to the State, or to any of its political subdivisions, the Register of the State Land Office, or the governing authority of such political subdivision, shall execute and deliver to such person a certificate of the same in the following manner, which certificate shall be held and taken as evidence of the redemption of such lot or lands in the name of the person who was assessed with the same at the time of adjudication.'

"Counsel for relators in his brief further urges that the exception of misjoinder should be overruled for the reasons that the test to be applied in considering such exceptions is whether the parties plaintiff or parties defendant have a common interest in the subject-matter of the suit; and further that the matter is largely within the discretion of the trial judge, citing the following cases: Reardon v. Dickinson, 156 La. 556, 100 So. 715; Gill v. City of Lake Charles, 119 La. 17, 43 So. 897.

"Counsel for the Register of the State Land Office in support of his exception of misjoinder touching the rights of relators under said Act No. 161 of 1934, as amend-

ed, urges and maintains that under the allegations of relators' original and amended petitions, both as to facts and the law relied upon, the Register of the State Land Office is not shown to have any ministerial duty to perform.

"Counsel for relators is correct in his exposition of the law governing exceptions of misjoinder, but at the same time the allegations of facts and the law relied upon should disclose, as between defendants, a common interest in the subject-matter of the suit.

"The pertinent portion of Section 1 of Act No. 161 of 1934, as amended, simply provides:

" 'If the owner or any person interested personally or as heir, legatee, creditor or otherwise, except a judgment creditor of the owner, in any lots or lands bid in for and *adjudicated to the State, or any of its political subdivisions,* as long as the title thereto is in the State, or in any of its political subdivisions, or if not heretofore contracted to be sold by the State or such subdivisions, shall contract to pay to the Treasurer of the State, or the proper authority of such political subdivision, in the manner hereinafter provided, the amount of the actual taxes for which said lots or lands were *adjudicated to the State, or to any of its political subdivisions, the Register of the State Land Office, or the governing authority of such political subdivision,* shall execute and deliver to such person a certificate of same in the following manner.' (Italics by the Court.)

"The Court construes this act to mean that if lands are adjudicated to the State for unpaid taxes, and as long as the title is in the state, or the state has not contracted to sell the lots or lands, any person designated therein can, if his application be timely, redeem said land from the state upon the terms and conditions therein provided, and the Register of the State Land Office shall execute and deliver to such persons the certificate of redemption.

"On the other hand, if lands are adjudicated to a political subdivision of the state for unpaid taxes, and as long as the title is in this political subdivision, or the subdivision has not contracted to sell said lots or land, any person designated in the act can, if his application be timely, redeem said lands from the political subdivision by entering into a contract with the proper authority of such political subdivision to pay the actual taxes for which said lands were adjudicated to the said political subdivision, upon which it becomes the duty of the proper authority of such political subdivision to execute and deliver to such person certificates of redemption. In other words, if the property has been adjudicated to the state, and the transaction is with the state, and all the requisites and formalities have been complied with, it is the duty of the Register of the State Land Office, acting as the agent of the state, to execute and deliver the certificates of redemption. But if the lands have been adjudicated to a political subdivision and the transaction is with the political subdivision, and all the requisites and formali-

ties of the act have been met and complied with, it is then the duty of the proper authority of the political subdivision to execute and deliver the certificate of redemption.

■ "It is clearly apparent that when the act refers to title being in the state or any of its political subdivisions, it simply means the state or the political subdivision to which lands have been adjudicated for non-payment of taxes. It has not been alleged that the Pontchartrain Levee District is a political subdivision to which these lands have been adjudicated for the nonpayment of taxes, in fact the contrary is alleged in the petition.

"The Court is of the opinion that the Register of the State Land Office has no duty to discharge, ministerial or otherwise, under the provisions of Act No. 161 of 1934, as amended. Additional reasons will be given in a further consideration of this exception insofar as it applies to the alternative demands, that is, the redemption of the lands under Section 62 of Act No. 170 of 1898, as variously amended.

"Relators in the very first articles of their petition allege that the land in question was adjudicated to the State for unpaid taxes from 1880 through 1890, which sale and adjudication is duly registered in the office of the Clerk of Court of Jefferson Parish.

"They also allege that the land in question was transferred by the said State of Louisiana to the Pontchartrain Levee District, which sale is registered in C. O. B.

21, folio 747 and 749 in the office of the Clerk of Court for the Parish of Jefferson.

"The Pontchartrain Levee District was created by Act No. 95 of 1890, as amended by Act No. 96 of 1894, Section 12 being the pertinent part, reading as follows:

" 'Be it enacted by the General Assembly of the State of Louisiana, That Section 12 of Act No. 95, approved July 8th, 1890, be amended and reenacted so as to read as follows:

" 'That in order to provide additional means to carry out the purposes of this Act, and to furnish other resources to enable said Board to establish and complete a thorough system of levees, and to protect the lands of the Pontchartrain Levee District from floods from the Mississippi River, all lands belonging to the State of Louisiana embraced in the original grants by Congress to the State for levee and drainage purposes that are located in the Parishes or parts of Parishes comprising the Pontchartrain Levee District and subject to overflow be, and the same are hereby donated and transferred to said Board of Commissioners: Provided this shall in no wise interfere with the rights or claims of actual settlers and that all lands occupied, improved or cultivated by such actual settlers shall be reserved by the state and shall be subject to entry only by actual settler's under provisions of Act No. 21 of 1886, and said claims shall be adjudicated by the Register of the State Land Office in pursuance of rules and regulations established by said Act No. 21 of 1886 and no entry shall be allowed by him unless more than one half of the land claimed by any

settler shall be suitable for cultivation. And also that all lands forfeited or sold to the State for non-payment of taxes situated in said district and liable to overflow be, and the same are hereby donated and transferred to said Board of Commissioners where the period for redemption has expired and as soon as the period shall hereafter expire. A list of said lands in the respective parishes or parts of parishes in said district shall be made out by the Auditor and certified to, and shall be furnished to the President of said Board, and when said list shall have been recorded in the Recorder's office of the respective Parishes the title of the State shall be absolutely vested in said Board of Commissioners of the Pontchartrain Levee District. That said lands shall be exempted from taxation during the time they shall remain in the possession of said Board. That said Board shall have authority to mortgage and sell such lands or otherwise dispose of them in such manner as it may [deem] proper, in order to raise funds to locate, construct, maintain and repair the levees and reclaim said lands from overflow. And when they shall sell said lands, either at public auction, or private sale, the proceeds thereof shall be deposited with the State Treasurer to the credit of the Pontchartrain Levee District, and shall be drawn out only upon the warrants of the President of said board for the purposes provided for in this act.'

"The lots of lands which relators are seeking to redeem were, by the very terms and provisions of the Act donated and transferred to the Levee District, and further the State of Louisiana, in obedience to and in compliance with the mandatory provisions of said Act, executed an additional written sale or conveyance by which the identical lands were transferred and made over to the Levee District, this instrument of conveyance being duly recorded in the office of the Clerk and Recorder of the Parish of Jefferson, thereby vesting the title to said lands absolutely in the Pontchartrain Levee District.

"Section 62 of Act No. 170 of 1898, as variously amended, relied upon by relators in their alternative demand, reads as follows:

"'Sec. 62. Be it further enacted, etc., That if the owner, or any person, interested personally, or as heir, legatee, creditor, or otherwise, in any lot or lands bid in for and adjudicated to the State within twelve months from the day the act or deed is filed for record in the conveyance office, pay to the Treasurer of the State, the taxes, interests and costs, and twenty per cent thereon; the auditor, upon production of the treasurer's receipt, shall execute and deliver to such person certificate of redemption of the same under the seal of his office, which shall be held and taken as evidence of the redemption of such land and lands with the name of the person redeeming the same, and the amount paid shall be entered on his records of the lands across the entry of the same; provided, no certificate of redemption shall be issued by the auditor until all taxes, State, parochial and district due up to the day of redemption have been paid on said property.'

"This section was amended by Act No. 315 of 1910, but only to the extent of desig-

nating the Register of the State Land Office instead of the Auditor as the official to make, execute, and deliver the certificate of redemption.

"Section 62 was also amended by Act No. 41 of 1912 by striking out the words 'within twelve months from the day the' * * * deed is filed for record in the conveyance office' and inserting the words 'as long as the title thereto is in the State.'

"Section 62 was further amended by Act No. 72 of 1928, which is quoted in full:

## " 'AN ACT

" 'To amend and re-enact Act No. 41 of 1912 entitled "An Act to amend and re-enact Section 6 of Act No. 315 of 1910 entitled 'An Act to amend and re-enact Sections (53), fifty three, (58) fifty eight, (59) fifty nine, (60) sixty, (61) sixty one, (62) sixty two, (68) sixty eight, and (69) sixty-nine, of Act 170 one hundred and seventy of the Session 1898, entitled "An Act to provide an annual revenue for the State of Louisiana by levying of annual taxes upon all property not exempted from taxation and prescribing the method of assessing and collecting the same, and of enforcing the payment thereof in the several parishes of the State, and setting forth the purposes for which said levy is made," and to repeal all laws or parts of laws in conflict or inconsistent with this Act.' "

" 'Section 1. Be it enacted by the Legislature of Louisiana, That Act No. 41 of 1912, be amended and re-enacted so as to read as follows:

" ' "Section 1. Be it enacted by the General Assembly of the State of Louisiana,

That Section 6 of Act No. 315 of the General Assembly of 1910 be amended and re-enacted so as to read as follows:

" ' "Be it further enacted that Section (62) sixty-two of Act 170 of 1898 be amended and re-enacted so as to read as follows, to-wit:

" ' "Section 62. Be· it further enacted, etc., That if the owner or any person interested personally or as heir, legatee, creditor or otherwise, in any lots or lands bid in for and adjudicated to the State, as long as the title thereto is in the State or in any of its political subdivisions, or if not heretofore contracted to be sold by such sub-divisions, shall pay to the Treasurer of the State, the taxes, interests and costs and twenty (20) per cent. thereon, the Register of the State Land Office, upon production of the Treasurer's receipt, shall execute and deliver to such persons a certificate of the same under the seal of his office, which, when duly recorded in the Conveyance Office of the Parish wherein said property is situated, shall be held and taken as evidence of the redemption of such land or lands with the name of the person redeeming the same. The amount paid shall be entered upon the records of lands by said Register and he shall immediately and in writing notify the Assessor of the Parish wherein said redeemed lot or lands are situated of said redemption, provided, no certificate of redemption shall be issued until all taxes, State, Parochial, district and municipal, due up to the day of redemption, have been paid on said property. But all certificates issued under this section shall be in the name of the original owner to enure to the

benefit of all persons holding rights under said owner."

" 'Section 2. Be it further, etc., That all laws or parts of laws in conflict with or inconsistent with this act be and are hereby repealed.'

"As pointed out by counsel for exceptor, Act No. 170 of 1898, as amended, is the general revenue law of the State, under which taxes are collected and property sold for the non-payment of taxes. This statute is a general law. On the other hand, Act No. 95 of 1890, the act which created the Pontchartrain Levee District, is a special statute. In order for relators to be entitled to relief under Act No. 170 of 1898, as amended, this Court would have to hold that Section 62 of Act No. 170 of 1898, as amended by Act No. 72 of 1928, repealed by implication the provisions of Section 12 of Act No. 95 of 1890, as amended, which is a special statute.

"The question then to be decided, stated tersely, is whether Act No. 161 of 1934, as amended, and Section 62 of Act No. 170 of 1898, as finally amended by Act No. 72 of 1928, revoked the donation made to the Board of Commissioners of the Pontchartrain Levee District by the creative statute Act No. 95 of 1890 and the sale or conveyance of the lands in question made by the State to the Levee District on or about May 27, 1902, and of record in the office of the Clerk of Court for the Parish of Jefferson.

"A careful reading of the various acts quoted and relied upon by relators discloses that they terminate with the general re-

pealing clause 'That all laws or parts of laws in conflict with or inconsistent with this act be and are hereby repealed.'

"If the Legislature had intended by the various acts quoted and relied upon by relators to revoke and set aside the donations made of the lands by the Act creating the Levee District and the sale of the lands by the State to the Levee District, is it not likely and probable that the repeal or revocation would, in one of the various acts at least, been in clear, direct, and unmistakable terms, instead of left to inference, conjecture and implication?

"Repeals by implication are not favored. N. O. Motor Co. v. Kelt, 3 La.App. 336; Wachsen v. Commission Council, 162 La. 823, 111 So. 177. Repeals by implication are not favored; and, if it is possible to reconcile statutes by any fair and reasonable construction, courts will do so. Bennett-Brewer Hdw. Co., Inc., v. Wakeman, 160 La. 407, 107 So. 286.

"Repeals by implication will not be presumed, and two statutes must be so inconsistent that they can not exist, and, whenever possible, they should be so construed as to harmonize and not to clash with one another. Thibodaux Boiler Works v. Peoples Sugar Co., Inc., 11 La.App. 377, 122 So. 290.

"If the provisions of Section 62 of Act No. 170 of 1898, as finally amended by Act No. 72 of 1928, were construed so as to operate as a repeal of the provisions of Section 12 of Act No. 95 of 1890, as amended, and to revoke the grants made under the latter statute, then Act No. 72 of

1928 would be broader than its title, and, therefore, unconstitutional.

█ "The Court is of the opinion that when in the year of 1902 the State, in compliance with the provisions of Act No. 95 of 1890, sold and transferred to the Pontchartrain Levee District the lands in question, and the sale was duly recorded in the office of the Clerk of Court of the Parish of Jefferson, the title to these lands was vested absolutely in the Levee District and that the sale or conveyance could only be revoked or set aside by subsequent acts or legislation clear and unequivocal in its terms.

█ "The Court is also of the opinion that the acts quoted and relied upon by relators, under which they seek to redeem said lands, did not revoke or set aside the donations, sale or conveyance made to the Pontchartrain Levee District under the provisions of the creative Act No. 90 of 1890, as amended, and that the title to the lands in question is still in said levee district. To decide otherwise would be to hold that a general statute repeals a special statute by implication.

█ "The facts set forth and the law relied upon by the relators disclose that the Levee District has not been divested of its title to the lots or land, and as a natural result thereof the Register of the State Land Office is not a party in interest and has no duties to perform. The exception of misjoinder as it applies to the demands of relators under the terms of Act No. 161 of 1934, as amended, and the duties of the Register of the Land Office thereunder also as it applies to the alternative demands of relators is sustained.

"The Supreme Court of this State has ruled in State ex rel. Atchafalaya Basin Levee Board v. Capdevielle, Auditor et al., 142 La. 111, 76 So. 327, and in Atchafalaya Land Co. v. Grace, Register et al., 143 La. 637, 79 So. 173, and in State ex rel. Board of Commissioners of Caddo Levee District et al. v. Grace, Register et al., 145 La. 962, 83 So. 206, that the lands which had been granted to the several Levee Districts, *though not yet conveyed to the Levee Boards by instruments of conveyance signed by* the Register of the Land Office and the State Auditor, were not to be regarded as 'lands belonging to the State of Louisiana,' and that such lands were not subject to entry or purchase at the State Land Office, because they had been withdrawn from the general land laws of the state.

"In the cases above cited it will be noted that while the lands had been donated or granted to the various Levee Districts by the several acts creating the said Levee Districts, the grant or donation had not been confirmed or completed, for the reason that the Auditor and the Register of the State Land Office had failed and neglected to convey and transfer the lands to the Levee Districts by a written instrument to be duly recorded in the office of the Clerk of Court in the parish in which the land was situated. Yet, even under these conditions and facts, the Supreme Court held that the lands in question had been withdrawn and were not subject to the general land laws of the state.

"The facts are quite different in the case at bar. The lands involved in this suit were adjudicated to the state for unpaid taxes in the month of November, 1891, or forty-five years ago. The same lands were then granted or donated to the Pontchartrain Levee District by Act No. 95 of 1890, as amended by Act No. 96 of 1894, which, if we accept the rulings of the Supreme Court in the cases cited above, withdrew and set them aside from the general land laws of the state. But an additional step was taken. On May 27, 1902, the lands in question were transferred by a written instrument by the state to the Levee District and this sale or conveyance is of record in the office of the Clerk and Recorder in the Parish of Jefferson. This additional step vested title absolutely in the Levee District, and the general land laws were and are no longer applicable, until the legislature, by a statute, clear and unmistakable in its terms, free from and devoid of implication, divests the Board of Commissioners for the Pontchartrain Levee District, of the absolute title now vested in it.

"A careful analysis of Act No. 72 of 1928, finally amending Section 62 of Act No. 170 of 1898, convinces the Court that its effect, if any it has, is to grant the right of redemption in such cases where the title of the State, though the property may have been transferred to a subdivision, has not been absolutely vested in the subdivision.

"All of the allegations of fact in relators' petition, and the law quoted by them as being applicable to the facts in the case, carefully considered, the Court is of the further opinion that the exception of no right or cause of action filed by the Register of the State Land Office should be also sustained.

"The Treasurer of the State filed an answer and in so far as he is concerned, the case will be considered on the merits. The facts and evidence presented and adduced by relators fail to present a case as against this official.

"The exception of no right or cause of action filed by the Register of the Land Office to the original and supplemental and amended petition, being sustained, dismisses the Board of Commissioners for the Pontchartrain Levee District from the case as the demands against them were only incidental to the demands against the Register."

For the reasons assigned, the judgment of the lower court is affirmed at appellants' cost.

O'NIELL, C. J., and LAND and ODOM, JJ., dissent.

O'NIELL, Chief Justice (dissenting).

The right of the relators to redeem their property, by complying with the provisions of Section 62 of Act No. 170 of 1898, as amended by Act No. 72 of 1928 and by Act No. 175 of 1934, seems very plain to me.

Before Section 62 of Act No. 170 of 1898 was amended by Act No. 72 of 1928, it allowed any former owner of property that was adjudicated to the State for non-

payment of taxes to redeem his title, by paying the taxes, interest and costs, and 20 per cent thereon, *as long as the title to the property remained in the State*; but it was not declared in the statute that this right of redemption should apply to land that had been transferred by the State to "any of its political subdivisions",—or levee districts. Act No. 72 of 1928 was adopted for the purpose only of declaring that the right of redemption of tax titles was applicable as· well to titles standing in the name of a levee district, as to titles not transferred by the State to a levee district. The only change that was made by the amendment of Section 62 of Act No. 170 of 1898, by Act No. 72 of 1928, was the adding of the words "or in any of its political subdivisions, or if not heretofore contracted to be sold by such sub-division", after the words "as long as the title thereto is in the State". Act No. 72 of 1928 was introduced in the Legislature, as Senate Bill No. 3, by Senator Philip H. Gilbert, who was then a prominent lawyer residing in the Atchafalaya Basin Levee District, and who was afterwards a judge of one of the district courts, in that levee district. The Official Journal of that session of the House of Representatives, p. 628, shows that, in the original Senate Bill, No. 3, as introduced by Senator Gilbert, he italicized the words "or in any of its political subdivisions", to emphasize the one and only purpose of the amendment of Section 62 of Act No. 170 of 1898. The words that were italicized were the only words proposed to be added to Section 62 of Act No. 170 of 1898, by Senate Bill No. 3. On the recommendation of the Legislative Bureau, the words "or any of its political subdivisions" were not italicized; and the words "or if not heretofore contracted to be sold by such subdivision" were added.

At the same time when Senator Gilbert introduced Senate Bill No. 3, he introduced a companion bill, being Senate Bill No. 2, which became Act No. 88 of 1928, and which validated all of the redemption certificates that were issued theretofore by the Register of the State Land Office, for titles which had been transferred to the levee districts. This act, No. 88 of 1928, page 90, reads as follows:

"Be it enacted by the Legislature of Louisiana, That all certificates of redemption of lands, issued by the Register of the State Land Office, the title of which lands, at the time said certificates issued, was in the name of the State or in that of any of its political subdivisions, and which certificates of redemption were otherwise issued in compliance with the provisions of Act 41 of 1912, shall, when duly recorded in the Conveyance Office of the Parish wherein said lands are situated, be held and taken as evidence of the full and complete redemption of such lands, and as legal and valid."

That statute is evidence of the fact that, even before Section 62 of Act No. 170 of 1898 was amended by Act No. 72 of 1928, the lands that were adjudicated to the State for nonpayment of taxes, and that were transferred by the State to a levee district, were deemed subject to redemption, even though the statute did not then, in terms, declare that the right of

redemption should apply to lands that were transferred by the State to a levee district.

Act No. 41 of 1912, which is referred to in Act No. 88 of 1928, was the last amendment and re-enactment of Section 62 of Act No. 170 of 1898, previous to the amendment and re-enactment that was made by Act 72 of 1928.

The Official Journal of the House of Representatives, for the regular session of 1928, page 628, discloses also that the Legislative Bureau reported on Senator Gilbert's two bills, No. 2 and No. 3, as companion bills,—the one bill having no other purpose or effect than that of validating the certificates of redemption that had been issued by the Register of the State Land Office for tax titles that had been transferred to the various levee districts, —and the other bill having no other purpose or effect than that of expressly authorizing the redemption (under Section 62 of Act No. 170 of 1898) of lands that had been adjudicated to the State for nonpayment of taxes and that had been transferred by the State to a levee district.

On the trial of this case the relators tendered the testimony of the chief clerk in the state land office to prove that, from the time that Section 62 of Act No. 170 of 1898 was amended by Act No. 72 of 1928, up to October 12, 1935, on which date the Attorney General in a letter to the Register of the State Land Office made an adverse ruling, Section 62 of Act No. 170 of 1898 was construed by the land department as allowing the redemption of lands that had

been transferred by the State to a levee district. The Legislature, with that course of construction and procedure of the land department before it, again amended Section 62 of Act No. 170 of 1898, by Act No. 175 of 1934, which did nothing more than to reduce the penalty from 20 per cent to 5 per cent, and to fix the rate of interest at 1 per cent per month. No other change whatever was made in the wording of Section 62 of Act No. 170 of 1898, by the amending act, No. 175 of 1934. The Legislature, therefore, again recognized as it had recognized in the adoption of Act No. 88 of 1928, that the right of redemption, provided for in Section 62 of Act No. 170 of 1898, had been deemed applicable to lands that had been transferred by the State to a levee district.

Act No. 161 of 1934 merely granted, for the short period ending on the last day of September, 1935, the right of a former owner of property that had been adjudicated to the State, or to any of its political subdivisions, for delinquent taxes, to redeem his property by paying, in five equal annual installments, the amount of the taxes for which the property was sold to the State or to the political subdivision. The judge of the district court held that that act was applicable only to lands adjudicated to the State, as long as the title remained in the State, and to lands adjudicated directly to a political subdivision of the State, as long as the title remained in the political subdivision. That is a very strict construction of the statute, and, in my opinion, is opposed to the spirit of the law, and the liberal intention which the Legislature had

in mind. Act No. 161 of 1934 is almost a literal copy of Section 62 of Act No. 170 of 1898, except that the terms on which the right of redemption were extended were made more liberal, in order to induce the former owners of lands adjudicated to the State, or to any of its political subdivisions, to redeem their lands within the short period allowed by Act No. 161 of 1934. The fact that the phraseology of Section 62 of Act No. 170 of 1898, as amended, was copied literally in Act No. 161 of 1934 indicates that the Legislature intended that the privilege granted by Act No. 161 of 1934 should extend to all cases theretofore provided for by Section 62 of Act No. 170 of 1898, and should go further and apply also to all lands adjudicated directly to any political subdivision of the State, for nonpayment of taxes. In support of that interpretation of Act No. 161 of 1934, counsel for the relators in this case, in their brief, cite the Report and Opinions of the Attorney General, 1934–1936, pp. 1386, 1390, and 1398. The substance of these opinions rendered by the Attorney General, and cited by counsel for the relators in this case, was that the purpose of Act No. 161 of 1934 was to induce the taxpayers who had permitted their property to be adjudicated for nonpayment of taxes to redeem the property and return it to the assessment rolls, because the State and her subdivisions profited only by subjecting the property to the payment of taxes.

Act No. 161 of 1934, however, was only temporary legislation. Hence the construction which the majority of the members of the court are now giving to that act is not so important as is the construction which is being given to Section 62 of Act No. 170 of 1898, as amended by Act No. 72 of 1928 and by Act No. 175 of 1934.

It is said in the opinion rendered by the judge of the district court in this case, and adopted as the opinion of this court, that the question to be decided is whether the Legislature, by Act No. 72 of 1928, amending Section 62 of Act No. 170 of 1898, revoked the donation which the State had made to the Board of Commissioners of the Pontchartrain Levee District, by Act No. 95 of 1890, creating the levee district, and revoked the act of conveyance of the land in contest, made by the State to the levee district, on or about the 27th day of May, 1902. And, in pursuance of this idea, the judge decided that the donation to the levee district was not revoked by Act No. 72 of 1928, because the act did not have the effect of repealing any of the statutes creating the levee districts throughout the State.

It is not contended by any party to this suit that Act No. 72 of 1928 had the effect of revoking any of the donations that the State had made to the boards of commissioners of her several levee districts. No one contends that Act No. 72 of 1928 had the effect of repealing—to any extent whatsoever—any of the statutes creating the several levee districts throughout the State. Any land that the State has transferred to the boards of commissioners of any of her levee districts remains as completely under the control of the Legislature

as if the title: had not been placed in the name of the board of ·commissioners of the levee district. A·board of commissioners of a levee district is only a state agency, created by the Legislature for the purpose of disposing of, and taxing, the lands in the levee district, on such terms and conditions and under such rules and regulations as the Législature, from time to time, may see fit to prescribe. State ex rel. Atchafalaya Basin Levee Board v. Capdervielle, State Auditor, 142 La. 111, page 113, 76 So. 327; Atchafalaya Land Co. v. F. B. Williams Cypress Co., 146 La. 1047, 84 So. 351; State ex rel. Board ·of Commissioners of Tensas Basin Levee District v. Grace, Register, 161 La. 1039, 109 So. 830; Pruyn v. Nelson Bros., 180 La. 760, page 764, 157 So. 585, 586; Little v. Williams, 231 U.S. 335, 34 S.Ct. 68, 58 L.Ed. 256.

In the case of Atchafalaya Land Co. v. F. B. Williams Cypress Co., .supra, the court said [page 355] : ·

"But it is also well settled that the lands intended to be conveyed by the statute creating the levee district remained under the control of the Legislature *so long as an absolute or indefeasible title had not vested in any individual or private corporation.* * * *

"The reason why the state did not, by the act of the Legislature creating the levee district, lose control over the lands, is that the board of commissioners of the district was thereby made a state agency, *subject to the authority and control of the state Legislature.*" (The italics are supplied by me.)

In the case of Pruyn v. Nelson Bros., supra, the court observed with regard to this very levee district [page 586] :

"The Pontchartrain levee board is a political subdivision of the state of Louisiana, organized under and by virtue of the laws of this state, particularly Act No. 95 of 1890, as amended."

There is no reason why the lands in a levee district, to which the State has transferred her tax titles, should not be subject to redemption by the former owners, under the same terms and conditions that are prescribed by the Legislature for the redemption of any and all other lands that have been adjudicated to the State for nonpayment of taxes. No reason is suggested why the Legislature may not grant to the former owners of lands of which the State has transferred her tax titles to the levee districts the same right of redemption that is granted to the former owners of any other lands that have been adjudicated to the State for nonpayment of taxes. In the case of the Police Jury of Parish of Jefferson Davis v. Grace, Register, 182 La. 64 on page 68, 161 So. 22, on page 23, it was said:

"There is no limitation in the Constitution upon the authority of the Legislature to say what disposition shall be made of property adjudicated to the state for nonpayment of taxes."

The decisions cited in the prevailing opinion in this case, maintaining that the lands that have been granted by the State to the several levee districts are not to be regarded as "lands belonging to the State

of Louisiana",—in the sense of being· subject to entry or purchase at the state land office under the general land laws of the State,—are not appropriate to the present case, because, in this case, the statute in question,—Act No. 72 of 1928,—amending Section 62 of Act No. 170 of 1898,—was enacted for the very purpose,—and for the only .purpose,—of making the statute applicable to lands that have been transferred by the State to the·boards of commissioners of her levee districts.

I respectfully submit that the decision rendered in this case defeats the very object and purpose of Act No. 72 of 1928, and absolutely destroys its effect.

For these reasons I respectfully decline to subscribe to the prevailing opinion or the decree rendered in this case.

On Rehearing.

HIGGINS, Justice.

It was so strongly insisted that a grave injustice had been done the relators ·and other similarly situated distressed property owners as a result of the interpretation placed by us upon the redemptive statutes involved herein that a rehearing was granted for the purpose of giving· further consideration to the matter.

The original opinion sets forth the undisputed facts and the provisions of the statutes applicable to the case and no useful purpose will be served by again restating them. The sole issue in the case is the correct construction of the provisions of Act No. 161 of 1934 and Act No. 72 of 1928 relied upon ·by relators. A brief statement of the history and importance of levee boards and the functions they perform is pertinent in arriving at the proper legislative intent. Originally, protection of the inhabitants and their possessions from flood waters of the streams in this State was afforded by levees which were maintained locally. In Article 213 of the Constitution of 1879, the State Government recognized its responsibility and provided for Levee· Districts with a general State tax, and Article 214 thereof made provision for levee commissioners and taxes within such districts. Article 210 of the same Constitution granted delinquent property owners one year from the date of the tax sale within which to redeem their property.

In order to carry out the provisions of. the first two above mentioned .Articles, the Legislature enacted Act No. 95 of 1890. This statute created the Pontchartrain Levee District, established a Board of Commissioners to govern it, gave this Board the power to levy district taxes based on value and special taxes and forced contributions, granted certain lands to the Levee District and exempted them from taxation, authorized the Board to mortgage and sell the lands and to apply the proceeds for levee purposes, authorized the Board to issue bonds, made the Board a body politic, gave it domicile, and, in general, made it an independent corporation with special duties, rights and powers.

The Constitutions of 1898, 1913 and 1921 have continued to provide a general state tax for levees and special taxes within the district. Throughout all of this period of

time levee districts have been considered and treated as a thing apart from other subjects. The provisions relating thereto are treated of in special Articles of the Constitution, separate and apart from parochial, municipal or other public affairs. During the entire existence of the levee boards, citizens in every part of the State have paid taxes to support levee districts, although they did not reside within them. Throughout this period of time an additional tax has been imposed upon property within these districts which other property elsewhere has not been subjected to and the validity of such taxes has been recognized. During all these years there have been general laws pertaining to the disposal of lands adjudicated to the State for unpaid taxes and it has been consistently recognized that these general laws did not apply to lands belonging to the levee districts. These districts from the very beginning have issued bonds which have not been and are not now considered to be obligations of the State of Louisiana.

Our jurisprudence shows that both the judicial and legislative branches of our government have stressed the importance of carefully dealing with the lands granted by the State to the levee boards under the provisions of Section 12 of Act No. 95 of 1890. That this grant of lands was not lightly to be considered as revoked or repealed by the Legislature is established by a number of decisions. Various parties have used the provisions of Act No. 215 of 1908, Act No. 30 of 1915, Ex.Sess., and Act No. 230 of 1918 as a basis for arguing that the land grants to the levee boards

have been revoked or repealed, but their claims were rejected. State ex rel. Atchafalaya Basin Levee Board v. Capdervielle et al., 142 La. 111, 76 So. 327; Atchafalaya Land Co., Ltd. v. Grace, Register et al., 143 La. 637, 79 So. 173; State ex rel. Board of Com'rs of Caddo Levee Dist. et al. v. Grace, Register et al., 145 La. 962, 83 So. 206; Board of Com'rs of Tensas Basin Levee Dist. v. Hardtner et al., 164 La. 632, 114 So. 494.

Our jurisprudence also shows that the courts and the members of the Legislature have consistently recognized the difference between the lands which have been granted to the levee districts and not formally conveyed to them and those lands which have been conveyed to them by the State through proper recorded instruments of conveyance signed by the register of the State Land Office and the State auditor. See the authorities cited supra and also State ex rel. Fitzpatrick v. Grace, Register et al., 187 La. 1028, 175 So. 656, and State v. Board of Com'rs of Caddo Levee Dist., 188 La. 1, 175 So. 678.

In recognition of this legislative policy of treating lands to which the levee districts have perfected title, different from those in which it had an inchoate right or title, this Court held, in the instant case, that the two Acts in question did not divest the levee board of its "absolutely vested" title to the property in controversy but, on the contrary, that the Acts had reference to redemptions of property only when the title thereto was in the State or in some subdivision of the State to which the lands had been adjudicated in the first instance.

Relators admit that the interpretation given by this Court to the provisions of Act No. 161 of 1934 is at least "possible", or strictly in accord with the wording of the Act, but they state that the same construction cannot be given to the provisions of Act No. 72 of 1928. However, the relators concede that the Act of 1934 substantially copies the Act of 1928 and grants more liberal terms of redemption and payment. One of the methods of determining what the Legislature meant by an ambiguous clause in a statute is to consider what the Legislature has done in subsequent acts on the same subject. We reiterate that it is our opinion that Act No. 72 of 1928 refers to those subdivisions to which properties were adjudicated for taxes. We think that the Act furnishes intrinsic evidence of this by its own words and that search elsewhere for a pretended spirit is neither necessary nor proper. But, if any doubt did exist as to this meaning, the Legislature resolved that doubt and clarified the matter by the provisions of Act No. 161 of 1934, which clearly and unequivocably state the law to be as we interpreted the provisions of Act No. 72 of 1928.

At the time we decided this case, the Legislature was in session and it again provided a redemptive statute, i. e., Act No. 47 of 1938. The language used therein specifically refers to those political subdivisions to which property is adjudicated for taxes and the statute again fails to mention levee boards directly and also fails to make reference to levee boards by implication, because it does not refer to subdivisions to which properties have been transferred by the adjudicatee. Furthermore, the members of the Legislature showed that by "political subdivisions" they meant towns, villages and cities—for the statute expressly and specifically exempted the City of New Orleans, a municipal corporation and a political subdivision of the State, from its effect. If the members of the Legislature had not been satisfied with the judgment of this Court in this case, Act No. 47 of 1938 might readily have reflected its dissatisfaction by clearly and unequivocably extending the provisions of the law to lands, the titles of which are "vested absolutely" in the levee boards, and transferred to them by the State.

The significant point is that when three Constitutional Conventions have sought specifically to provide special laws to strengthen the control of floods and when for over a half century this system has been in effect, it is not to be presumed that the Legislature would strike down this system by implication but, rather that, if such a result were intended, it would expressly so state. While we are not concerned with the wisdom of the Legislature, its actions bespeak its interest in the welfare of the levee boards which it created for the purpose of protecting the people, and we feel certain that the Legislature would not in its wisdom destroy or injure these institutions without taking the trouble even to mention them.

Act No. 95 of 1890 expressly authorized the levee boards to sell, mortgage and use the lands which they have title to for the purposes which the board was created. If the contention of the relators is accepted,

then these lands to which the levee boards have absolute title would be subject to redemption by the former owner, even though the board had placed a mortgage, lease or improvements thereon, for the titles remain in the boards. The statute is silent as to what will become of the mortgage, lease or building and improvements placed thereon by the levee board and what the rights of the respective parties involved would be. To carry out relators' interpretation, the courts would have to legislate to a greater extent on this subject than the Legislature itself has done, for it by no means has enacted a comprehensive Act showing that it intended to deal with lands held by levee boards under absolute titles.

It is said that the author of the bill was an experienced legislator and familiar with this subject matter, and intended to affect the lands of the levee boards to which they had vested titles. We feel certain that if the learned author of the bill had intended the results contended for by relators, it would have been a simple matter for him to have used appropriate language to carry out that intention. But he signally failed to do that and one must, therefore, conclude that he did not intend to divest the levee boards of these lands.

 Act No. 88 of 1928, called a validating statute, and the companion measure, Act No. 72 of 1928, both failed to refer to levee boards by name and expressly to lands acquired by the State through tax sale and formally transferred by it to the levee boards. The record shows that the Register of State Lands, in acting upon applications for the redemption of lands, accepted the opinion of the Department of Justice, presided over by the Attorney General. The letter by him to the Register of State Lands shows that there had been a difference of opinion among his assistants as to the correct construction of the redemptive statutes and due to the importance of the matter, he finally concluded to let the courts settle it. While the trial judge ruled that the exhibits offered for the purpose of showing contemporaneous construction were not admissible, nevertheless, they are in the record and, under the circumstances above stated, even though considered, are of little or no value to the court in deciding the question. In any event, the opinions of these officers under the facts of this case are not binding upon the court, particularly where the relator has not shown that he acted upon an opinion of the Attorney General or the Register of State Lands to his detriment.

The case of State v. The Board of Com'rs of Caddo Levee Dist., 188 La. 1, 175 So. 678, which deals with the subject of repeal by implication is not in point, because there the court concluded that the early legislation and later statute occupied the same field and were hopelessly irreconcilable. Such is not the case here, as we have already explained.

For the reasons assigned, our original opinion and decree are reinstated.

O'NIELL, C. J., adhers to his dissenting opinion.

ODOM, J., dissents.

LAND, J., absent.