Act No. 99 of 1924 provided for the construction by the Orleans Levee District of the Bohemia Spillway, and authorized the District "to acquire by purchase, donation or expropriation the lands or other property necessary for the construction of such works."
As a condition precedent to removing any levees or taking possession of any property, the said District was required "to acquire by purchase or expropriation and to pay for all lands and property privately owned within the area covered by the proposed plan. * * *"
The lands involved in this suit were and are within that area and were and are within the area composing the Grand Prairie Levee District.
When the said spillway was authorized in 1924, these lands had been adjudicated to the State for unpaid taxes and the period for redemption had expired but the Grand Prairie Levee District had not required the State to transfer to it the *Page 791 
said lands as it might have done in accordance with the statute under which it was created, to-wit, Act No. 24 of 1898. That act provides, as does each of the other acts creating a levee district within the State, except that creating the Pontchartrain Levee District, that "it shall be the duty of the State Land Office * * * [to] convey to the said Board of Levee Commissioners by proper instruments of conveyance" such lands. It is well settled that such a grant as that contained in that statute is not a grant in praesenti and becomes complete only when the Levee District obtains from the proper State officials the necessary document. This is conceded by both my associates and is well settled. See many authorities cited in Judge McCaleb's concurring opinion. Therefore, even though those lands were consecrated to that Levee District by the act which created it, the original owners might have redeemed those lands for it is settled that such lands, even though adjudicated to the State and even though the period for redemption has expired, may still be redeemed by the former owner so long as no disposition thereof has been made by the State. In other words, though there are many cases which hold that such lands are removed from the operation of the general public land laws still they remain subject to the right of redemption so long as the State has not disposed of them. Woods v. Jastremski, 201 La. 1092, 11 So.2d 4; State ex rel. Hodge et al. v. Grace et al., 191 La. 15, 184 So. 527.
The question then is whether the statute, which authorized the construction of the Bohemia Spillway impliedly authorized the Orleans Levee District to take state lands without requiring the formal transfer which, up to that time, though required by law, had not been made. I think that the statute does not evidence such intention to make unnecessary such a formal transfer. All that the statute does is to provide that the District may acquire all lands or property necessary and that it must pay for all privately owned lands. I do not see that there is any implication that the District may take short cuts in acquiring public lands, and, I therefore think that even after the passage of Act No. 99 of 1924 it was necessary for the Grand Prairie Levee District to demand the formal transfer to it of the property which had been adjudicated to the State, and that it was also necessary for the Orleans Levee District to then require the Grand Prairie Levee District to transfer those lands to it.
One of my associates feels that that statute authorizes the District to take such lands without any formal transfer; that by this statute such land is dedicated to the Levee District, and that therefore the Levee District's title to it is perfected. My other associate thinks that the act merely sets aside such lands for the use of the Levee District to such an extent as to make it impossible for the former owners to make effective redemption.
I concede that the former owners may not obtain possession of the land itself for use in any way which would interfere with its use as a part of the spillway, for that land is now in actual use in said spillway. The Levee District would have had the right to expropriate it had the former owners redeemed it prior to the time at which it was taken for the spillway, and therefore, since the District did not expropriate but did appropriate, the former owners must be relegated to a claim for the value of the lands to a claim for the rights of which they have been deprived.
In order to maintain a petitory action it is not necessary that there be a claim for the possession of the land itself. Article 5 of our Code of Practice provides that: "The petitory action is that by which he who has the property of a real estate, or of a right upon or growing out of it, proceeds against the person having the possession, in order to obtain the possession of the immovable property, or the enjoyment of the rights upon it, to which he is entitled."
It is the mineral rights which are really involved here. The record shows that the Levee District has granted mineral leases on these lands. That a mineral lease represents a real right and may be claimed in a petitory action can no longer be doubted. See Act No. 205 of 1938. See also Gulf Refining Co. of Louisiana v. Glassell et al., 186 La. 190, 171 So. 846, which made the said act of 1938 necessary. See also 11 Tulane Law Review 607, 13 Tulane Law Review 416, 16 Tulane Law Review 586 and 1 La. Law Review 102.
It will not do to say that since the Levee District might have expropriated *Page 792 
the land no claim may now be made for such real rights as those represented by oil leases. In an ordinary expropriation all that is acquired is the right to make such use of the land as is necessary to carry out the purpose for which the land is expropriated. See dissenting opinion in Parish of Jefferson v. Texas Co. et al., 192 La. 934, 189 So. 580, and authorities cited therein. It is true that it was held in that case that the fee itself had been expropriated but that result was reached only because of the wording of the judgment of expropriation. There was no disagreement over the doctrine that ordinarily in an expropriation there is acquired only the right to use the property for such purpose as is necessary for the work for which it is expropriated.
The fact that such oil leases do not interfere with the use of the land for spillway purposes cannot be gainsaid by the Orleans Levee District since it, itself, has granted mineral leases on this same land.
My belief is that since the lands had not been transferred by the State when the former owners redeemed them that redemption was effective but that the former owners by that redemption took them subject to such conditions and such burdens as had been imposed upon them at that time by the State. The State had imposed the condition that those lands were to be included within the spillway. This made it impossible for the former owners to actually take possession of the lands but it does not deprive them of their right to claim the value of the lands or to claim the rights which still may be exercised in and on the lands so long as the exercise of those rights does not interfere with the use of the lands as a part of the spillway.
I respectfully dissent. *Page 820